[No. H035882. Sixth Dist. Nov. 18, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD OWEN VOIT, Defendant and Appellant.

## COUNSEL

Jonathan Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Lisa Ashley Ott, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LUCERO, J.[*]—

## 1. Introduction

After a preliminary examination, an information charged defendant Edward Owen Voit with six counts of lewd and lascivious conduct (Pen. Code, § 288, subd. (a))[1] involving three boys.[2] Due to an allegation of multiple victims, defendant faced a potential sentence of 90 years to life under the "One Strike" statute (§ 667.61).[3] Facing these charges, defendant, then age 51, agreed to plead no contest to six different charges and to be sentenced to a determinate term of 36 years in prison with the One Strike allegation dropped. Accordingly, defendant entered six separate no contest pleas to six counts of lewd and lascivious conduct involving the use of force, violence, duress, menace, and fear of immediate and unlawful bodily injury (§ 288, subd. (b)(1)) and he admitted that each count involved substantial sexual conduct (§ 1203.066, subd. (a)(8)). Defense counsel concurred in the pleas and stipulated that the preliminary hearing transcript contained a factual basis for the pleas.

Almost four months later, defendant submitted a letter asking to replace his attorney and to withdraw his no contest pleas. After conducting a *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*) hearing in the prosecutor's absence, the trial court denied defendant's motion. After denying the motion, the court imposed the agreed sentence of 36 years, and also various fines and fees, including a $500 fine pursuant to section 290.3 and a $1,325 total penalty assessment.

After obtaining a certificate of probable cause, defendant appeals. Without directly attacking the rulings denying substitute counsel and withdrawal of his plea, defendant asserts that "[t]he judgment must be reversed because there was not a factual basis for the pleas. There was no evidence of the use of force, violence, duress, menace, or fear of immediately bodily injury to sustain the convictions for violating section 288, subdivision (b)(1)" as to victims R. and V. Defendant acknowledges that there was evidence of force used against A.

---

[*] Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Unspecified section references are to the Penal Code.

[2] We will call the victims R., A., and V. to protect their privacy.

[3] Since 1995, section 667.61, subdivision (c) has included "[a] violation of subdivision (a) of Section 288" as among the offenses exposing a defendant to an indeterminate term of 15 years to life under the One Strike statute. (Stats. 1994, 1st Ex. Sess., ch. 14, § 1, p. 8570.)

■ We have requested and obtained supplemental briefing on the question whether a criminal defendant can create an appellate issue by disputing what he previously conceded, that there is a factual basis for his pleas, without also seeking to set aside his concession as mistaken. We will explain that defendant is estopped from making this argument.

The Attorney General concedes defendant's other points, that the fine at the time of defendant's crimes was $300 and that the penalty assessment must be reduced proportionally and further to eliminate ex post facto components. For the reasons stated below, we will reduce the fine to $300 and the penalties to $675 and affirm the judgment as so modified.

## 2. The Offenses

Defendant was born in October 1958. In 2008 he was six feet tall and weighed 195 pounds. In 2008, R., A., and V. made statements to San Jose police officers, and, on June 29, 2009, they testified at a preliminary examination as follows.

According to R., who was born in 1991, he had a three- to four-year sexual relationship with defendant that began when R. was six years old. R.'s mother met defendant in Alcoholics Anonymous. Defendant ended up moving into their apartment for a month or two, and then he moved into an apartment in a neighboring complex.

R. got into a routine of visiting defendant's apartment after school about four days a week where they watched television, ate, and played games on the computer. Defendant took him shopping and bought him what he wanted, such as a skateboard, a bicycle, and shoes. Defendant helped him build a skateboard ramp. Defendant had a lot of tools that R. played with.

Living in the same apartment complex as R. were two brothers, V., born in 1988, and A., born in 1990. R. befriended them and introduced them to defendant. They often visited defendant along with R. A. and V. recalled defendant taking them swimming and occasionally to the movies. Defendant bought them toys, including water guns, Legos, and remote control race cars.

Defendant showed R. nude cartoon pictures showing sexual positions on his computer. Sometimes all three boys looked at these pornographic pictures together. V. remembered looking at "adult" Web sites on defendant's computer. A. remembered that defendant showed them porn Web sites where naked people were having sex.

Defendant had magazines of naked people in his bedroom. The only picture R. remembered showed a naked family, including young children.

Defendant's touching of R. was not forceful in any way. He initiated physical contact very gradually, touching him to see how R. would react. R. did not physically resist him or say no. R. just sat there and let defendant do what he wanted.

Eventually, after about a month of visits, it became part of their routine for defendant to take R. into defendant's bedroom, pull R.'s pants and underwear down or off, sit him on the bed, grab his penis and masturbate him, kneel in front of him, and orally copulate him. Sometimes defendant's pants were unzipped and he touched his own erect penis.[4] After R. ejaculated in defendant's mouth, defendant stopped and they went back to watching T.V. or whatever else they were doing. Sometimes defendant just masturbated R. Once defendant had R. put his mouth on defendant's penis when defendant was masturbating. R. stopped when he tasted something.

On one occasion, defendant had R., A., and V. in his bedroom together. R. recalled that defendant removed all their pants and orally copulated each boy. R. was eight years old at the time. R. recalled that this happened six times. R. recalled that on two occasions defendant watched as the three boys orally copulated each other.[5]

A. also recalled defendant orally copulating A., R., and V. together in defendant's bedroom. A. felt weird and did not know if it was right or wrong. Defendant did not threaten him. Defendant was bigger and strong and "[h]e might have" used his size or strength to get A. to do what he wanted. He "[m]aybe" held his waist. "I think he was holding my leg" with one hand. A. and R. grabbed defendant's erect penis when he told them to. Defendant's pants were down. Afterwards, defendant told A. that it was okay.

As V. remembered, all the boys were lying on the bed under the sheets, so he could not be sure what defendant was doing to the other boys, but he orally copulated V. V. was "astonished" and did not know what to think or how to react. He did not physically resist. Defendant did not threaten him or say anything about keeping it a secret. V. remembered it only happening once.

A. recalled that, about two weeks after this incident, defendant orally copulated him and R. in defendant's living room. That was A.'s last sexual encounter with defendant. A. continued to visit defendant, although not as frequently.

---

[4] At the time of the preliminary examination, the complaint charged simple, not aggravated, lewd conduct. But the prosecutor asked R. if, "at any time—any of those times that you ended up in his bedroom where he touched you inappropriately as you've described and pulled down your pants, was it forceful in any way?" "No" was R.'s answer.

[5] R. also described defendant orally copulating another boy from the apartment complex three times, once during a car trip to Seattle. He also saw that boy's older brother orally copulate defendant once.

According to R., brothers A. and V. moved away when he was nine years old (which would have been in 2000). According to A., his family lived in those apartments when he was six to eight years old (which would have been 1996 through 1998). The father of A. and V. told the police that they moved from San Jose in 1998. V. could not recall whether he met defendant when he was 9, 10, 11, 12, or 13 (spanning the years 1997 through 2001).

The sexual encounters with R. continued until R. turned 10 in 2001, when defendant started spending more time with a younger boy.

Defendant did not threaten R. about cooperating or say he would withhold gifts, such as a skateboard. Defendant did not say anything about keeping it secret. R. was not afraid of defendant, but he was afraid of his mother finding out. He was afraid of her reaction and felt that he had done something wrong, because he kept going back when he could have stopped. R. told a police officer that he believed that he kept going back to defendant's residence possibly because defendant kept buying him things.

R.'s mother frequently asked him if anything inappropriate was happening with defendant. He denied it. Eventually he told her the truth after his mother told him that defendant had been arrested for molesting another boy.

### 3. The Proceedings

After the preliminary examination, an information was filed charging defendant with six violations of section 288, subdivision (a) for lewdly and lasciviously touching R., V., and A. while each was under the age of 14. Specifically, between October 8, 1997 (R.'s sixth birthday), and October 7, 2001, defendant orally copulated (count 1) and masturbated R. (count 2) and had R. orally copulate him (count 3). Between December 6, 1998 (V.'s 10th birthday), and December 5, 2002, defendant orally copulated V. (count 4) and between May 2, 1998 (A.'s eighth birthday), and May 1, 2003, defendant orally copulated A. twice (counts 5 and 6). Each count included allegations under section 667.61, subdivision (b) exposing defendant to a life sentence with a 15-year minimum imprisonment under the One Strike statute, and under section 1203.066, subdivision (a)(8), rendering defendant ineligible for probation. The information restated much of the original complaint, but also added count 6 and clarified the dates involved in count 5 and the sexual conduct involved in counts 4 and 5.

At a hearing on January 5, 2010, the trial court announced a resolution of the case. Defendant would plead no contest to six charges in a first amended information that was presented to the court, and he would receive consecutive midterms on each count for a total of 36 years in prison, to be served

consecutively to a previously imposed sentence of 11 years four months. Defendant agreed that it was his understanding.

Defendant acknowledged, among other things, that his attorney had explained the charges and his potential defenses; he was satisfied with his advice; he had enough time to speak with him about the issues; he was under no compulsion to change his plea; there had been no other promises to him than what the court had stated; he was aware that the maximum possible sentence he was facing under the original information was life imprisonment with a minimum parole eligibility of 90 years, and the maximum under the amended information was 48 years; and he could only earn 15 percent custody credit.

The amended information changed the six counts from violations of section 288, subdivision (a), to violations of section 288, subdivision (b)(1), adding allegations that the lewd and lascivious touching involved either force, violence, duress, menace, or fear. It also dropped the allegations under section 667.61, though retaining the substantial sexual conduct allegations.

Defendant pleaded no contest to each count, admitting it involved substantial sexual conduct. In taking defendant's no contest pleas, the court spelled out the particular allegations of the amended information, which included all the elements of the crimes, including force and duress, their dates, and the names of the victims of each count. Defense counsel concurred in the plea. This discussion ensued.

"The Court: Do you stipulate to a factual basis for these pleas based on the preliminary hearing transcript contained in the court file?

"[Defense counsel]: I do.

"The Court: And the People so stipulate?

"[The prosecutor]: Yes, Your Honor, and the police report?

"The Court: And the court has read and reviewed the police reports and the preliminary examination and moving papers and also finds a factual basis contained therein."[6]

Sentencing was scheduled for February 26, 2010, after a full probation report was prepared. On that date, sentencing was continued until April 30,

---

[6] It is unclear what "moving papers" the trial court had in mind at the change of plea hearing. Presumably the court was referring to the amended information just presented to the court.

2010. On the latter date, defendant presented a handwritten letter to his attorney stating that he wished to withdraw his pleas.[7] Among other things, he asserted that he did not believe the evidence in his case supported a conviction under section 288, subdivision (b)(1) because there was no evidence of force. "There is evidence that victims ask me." Sentencing was continued to give the prosecutor and the court an opportunity to review the letter and defense counsel an opportunity to make the requested motion.

At a hearing on June 18, 2010, the court established that defendant was asking to withdraw his plea based partly on his attorney's conduct. The trial court decided to conduct a hearing under *Marsden, supra,* 2 Cal.3d 118 and *People v. Smith* (1993) 6 Cal.4th 684 [25 Cal.Rptr.2d 122, 863 P.2d 192] in the prosecutor's absence. At the conclusion of the hearing, the trial court denied defendant's motion, having heard nothing that would allow defendant to withdraw his plea. Among other things, the court stated that there was a factual basis for defendant's plea.[8] In the prosecutor's presence, the court imposed the 36-year sentence specified in the plea bargain.

### 4. Restrictions on Appellate Review After a No Contest Plea

Entering a plea of guilty or no contest has many serious consequences for a criminal defendant. One of them is its restriction on the available issues that can be raised on appeal.

■ *People v. Chadd* (1981) 28 Cal.3d 739, 748 [170 Cal.Rptr. 798, 621 P.2d 837], explained: "A plea of guilty, of course, is the most serious step a defendant can take in a criminal prosecution. It operates first as a waiver of formal defects in the accusatory pleading that could be reached by demurrer. [Citations.] Next, because there will be no trial the plea strips the defendant of such fundamental protections as the privilege against self-incrimination, the right to a jury, and the right of confrontation. (*Boykin* v. *Alabama* (1969) 395 U.S. 238, 243 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122, 130–133 [81 Cal.Rptr. 577, 460 P.2d 449].) As to the merits, the plea is deemed to constitute a judicial admission of every element of the offense charged. (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) Indeed, it serves as a stipulation that the People need introduce no proof whatever to support the accusation: the plea ipso facto supplies both evidence and verdict. [Citation.] 'A plea of guilty is more than

---

[7] The letter purports to be 18 pages, only 10 of which appear in the clerk's transcript.

[8] The *Marsden* transcript has been filed under seal in this court. (Cal. Rules of Court, rule 8.328(b).) Because defendant is not directly challenging the rulings on his requests to withdraw his plea and to obtain substitute counsel, respondent has not been provided with the transcript and we do not further summarize the hearing.

a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.' (*Boykin* v. *Alabama, supra,* at p. 242 . . . .) Finally, it severely restricts the defendant's right to appeal from the ensuing judgment. (*People* v. *DeVaughn, supra,* at pp. 895–896.)"

■ A guilty plea convicts the defendant of the charged crime without proof at trial. (*People v. Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881]; *People v. Hoffard* (1995) 10 Cal.4th 1170, 1178 [43 Cal.Rptr.2d 827, 899 P.2d 896] (*Hoffard*); *In re Chavez* (2003) 30 Cal.4th 643, 649 [134 Cal.Rptr.2d 54, 68 P.3d 347]; see *People v. Wallace* (2004) 33 Cal.4th 738, 749 [16 Cal.Rptr.3d 96, 93 P.3d 1037] (*Wallace*).) " 'The legal effect of [a no contest plea] to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes.' (§ 1016, subd. 3.) A guilty plea 'admits every element of the crime charged' [citation] and 'is the "legal equivalent" of a "verdict" [citation] and is "tantamount" to a "finding" [citations]' [citation]." (*Wallace, supra,* 33 Cal.4th 738, 749.)

■ Issues concerning the defendant's guilt or innocence are not cognizable on appeal from a guilty plea. (*Hoffard, supra,* 10 Cal.4th at p. 1178; *In re Chavez, supra,* 30 Cal.4th at p. 649.) By admitting guilt a defendant waives an appellate challenge to the sufficiency of the evidence of guilt. (*People v. Thurman* (2007) 157 Cal.App.4th 36, 43–44 [68 Cal.Rptr.3d 425]; see *People v. Martin* (1973) 9 Cal.3d 687, 693–694 [108 Cal.Rptr. 809, 511 P.2d 1161].) The same restrictions on appellate issues apply after a no contest plea (cf. *People v. Shults* (1984) 151 Cal.App.3d 714, 719 [199 Cal.Rptr. 33]; see *Wallace, supra,* 33 Cal.4th at p. 749) and the admission of an enhancement (*People v. Lobaugh* (1987) 188 Cal.App.3d 780, 785 [233 Cal.Rptr. 683]).

■ In order to appeal after a conviction by plea of guilty or nolo contendere, a defendant must obtain a certificate of probable cause from the trial court. (§ 1237.5.) "Issues cognizable on an appeal following a guilty plea are limited to issues based on 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings' resulting in the plea. (§ 1237.5; see also *People v. Ribero* (1971) 4 Cal.3d 55, 60–64 [92 Cal.Rptr. 692, 480 P.2d 308].) The issuance of a certificate of probable cause pursuant to section 1237.5 does not operate to expand the grounds upon which an appeal may be taken as that section relates only to the 'procedure in perfecting an appeal from a judgment based on a plea of guilty.' (*Id.,* at p. 63; [citation].)" (*People v. DeVaughn, supra,* 18 Cal.3d 889, 895–896.)

Among the issues that can be raised after a guilty plea is whether the defendant knowingly, voluntarily, and intelligently waived his or her rights in entering the plea. (Cf. *People v. Panizzon* (1996) 13 Cal.4th 68, 80 [51

Cal.Rptr.2d 851, 913 P.2d 1061]; *People v. Navarro* (1966) 243 Cal.App.2d 755, 758 [52 Cal.Rptr. 686].) A defendant may also assert that his admission included a legal impossibility. (*People v. Soriano* (1992) 4 Cal.App.4th 781, 783 [6 Cal.Rptr.2d 138] [no contest plea to filing a forged instrument when a death certificate does not qualify as an instrument].)

■ In order to ensure that the entry of a plea is voluntary, California requires an inquiry by the trial court in some cases. "When taking a conditional plea of guilty or nolo contendere (hereafter no contest) to an accusatory pleading charging a felony, a trial court is required by Penal Code section 1192.5 to 'cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea.' " (*People v. Holmes* (2004) 32 Cal.4th 432, 435 [9 Cal.Rptr.3d 678, 84 P.3d 366], fn. omitted (*Holmes*).) "While there is no federal constitutional requirement for this factual basis inquiry, the statutory mandate of section 1192.5 helps ensure that the 'constitutional standards of voluntariness and intelligence are met.' (*People v. Hoffard, supra*, 10 Cal.4th at p. 1182, fn. 11.)" (*Id.* at p. 438, fn. omitted.) The inquiry also protects against an innocent person entering a guilty plea and creates a record against possible appellate or collateral attack. (*Hoffard, supra*, 10 Cal.4th at p. 1183.)[9]

■ *Holmes, supra*, 32 Cal.4th 432, explained that to comply with section 1192.5, "the trial court must garner information regarding the factual basis either from the defendant or defense counsel. If the trial court examines the defendant regarding the factual basis for the plea, the court may have the defendant describe the conduct that gave rise to the charge [citation], or may question the defendant regarding the detailed factual basis described in the complaint or written plea agreement. [Citation.] If the trial court inquires of defense counsel regarding the factual basis, counsel may stipulate to a particular document that provides an adequate factual basis, such as a complaint, police report, preliminary hearing transcript, probation report, grand jury transcript, or written plea agreement." (32 Cal.4th at p. 442.)

Thus, the trial court is required by statute to conduct an inquiry to establish the existence of a factual basis for a conditional plea of guilty or no contest. However, a plea of guilty or no contest waives an appellate claim of the nature "there is insufficient evidence supporting my plea." We see no material difference between that assertion and an appellate claim that "there is no factual basis for my plea." We believe that these assertions are fundamentally

---

[9] *Hoffard, supra*, 10 Cal.4th 1170 is widely cited for identifying the objectives of this statutory requirement in section 1192.5. However, the holding of that case is that the statute's duty of inquiry did not apply when the defendant entered an unconditional open plea. (10 Cal.4th at p. 1184.)

equivalent, so that a plea of guilty or no contest forecloses an appellate challenge that the plea lacks a factual basis. Section 1192.5 requires a factual inquiry by the trial court, not by the appellate court. Particularly where a defendant not only personally pleads guilty or no contest but also personally or through counsel concedes the existence of a factual basis for his or her pleas, that defendant should not be allowed to create an appellate issue by simply changing his or her mind about the existence of a factual basis for the plea, without also establishing that this concession resulted from a mistake.

The Fourth District Court of Appeal (Div. 1) reached essentially the same conclusion in *People v. Westbrook* (1996) 43 Cal.App.4th 220 [51 Cal.Rptr.2d 1] (*Westbrook*), where the appellate court refused to consider the merits of a defendant's challenge to his admission of a weight enhancement to a drug charge. "Westbrook . . . admitted the 'three pound weight allegation' . . . as a part of a plea bargain. A plea of guilty is an admission to every element of the charged offense and constitutes a conclusive admission of guilt. (*People v. Lobaugh*[, *supra*,] 188 Cal.App.3d 780, 785 . . . .) 'Admissions of enhancements are subject to the same principles as guilty pleas.' (*Ibid.*) Westbrook admitted the weight allegation and stipulated the grand jury transcripts would provide the factual basis for his plea. Through these actions he precluded consideration of whether there was a factual basis for the enhancement. (*People v. Pinon* (1979) 96 Cal.App.3d 904, 909–910 [158 Cal.Rptr. 425].) ' "Issues cognizable on an appeal following a guilty plea are limited to issues based on 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings' resulting in the plea." ' (*Id.* at p. 910, quoting *People v. DeVaughn*[, *supra*,] 18 Cal.3d 889, 895 . . . , & Pen. Code, § 1237.5.)" (*Id.* at pp. 223–224.) "Westbrook's arguments [that] the grand jury transcripts do not support the weight allegation does [*sic*] not raise an issue on appeal based on 'reasonable constitutional, jurisdictional or other grounds going to the legality of the proceedings' resulting in the plea. We thus do not address his arguments on the merits." (*Id.* at p. 224.)[10]

---

[10] We asked the parties to brief what *Wallace, supra,* 33 Cal.4th 738 had to say about the preclusive effect of a no contest plea and a stipulation to its factual basis. On further reflection, we acknowledge that it is a few steps removed from the issue before us. In that case, as quoted above, the Supreme Court acknowledged that the legal effect of a no contest plea is the same as a guilty plea, which amounts to an admission of every element of the crime charge (*id.* at p. 749) and it pointed out that a defendant who had also stipulated to the existence of a factual basis for his plea "could not have appealed from his ensuing conviction on the basis of insufficiency of the evidence." (*Id.* at p. 750.)

However, the defendant in that case was not directly appealing from his conviction by no contest plea. Rather, following a later conviction by a jury, he brought a collateral attack under section 1385 asking the trial court to strike a prior conviction that had resulted from a no contest plea because the plea lacked a factual basis. The question before the Supreme Court was whether, in deciding the motion to strike, the trial court could take into account that, prior

We also find support in *People v. Borland* (1996) 50 Cal.App.4th 124 [57 Cal.Rptr.2d 562], where the Second District (Div. 6) considered the impact of a no contest plea and a stipulation to its factual basis, stating, "Appellant may not enter into a negotiated disposition for an offense with a specified charging date, enjoy the fruits thereof, and then challenge the factual basis for the plea on appeal." (*Id.* at p. 127.) In that case, the defendant had pleaded no contest to violating a registration statute over the course of a specified three-month period and he stipulated that there was a factual basis for the plea. The appellate court concluded that the plea was "a judicial admission that the defendant committed the offense on the date alleged," so the defendant was estopped on appeal to challenge the charging date in the accusatory pleading. (*Id.* at p. 128.)

The Second District (Div. 6) was no more receptive in *People v. Nitschmann* (2010) 182 Cal.App.4th 705 [105 Cal.Rptr.3d 849] when another defendant sought to assert that the trial court erred by accepting a negotiated change of plea before finding that a factual basis for the plea existed. In that case the defense "[c]ounsel stipulated to a factual basis for the plea based on the allegations in the felony complaint and a consideration of the police reports." (*Id.* at p. 709.) While it is not clear from that opinion, apparently the police reports may not have been lodged with the trial court until a postsentencing hearing to increase the defendant's custody credits. The appellate court stated, "Appellant is estopped from attacking a procedure to find a factual basis for the plea that he agreed could be utilized." (*Ibid.*) "Having received the benefit of the bargain, appellant is estopped by his plea and should not be permitted to trifle with the courts by attempting to better the bargain through the appellate process." (*Ibid.*)[11]

We recognize that there is contrary authority. In *People v. Marlin* (2004) 124 Cal.App.4th 559 [21 Cal.Rptr.3d 470] (*Marlin*), the Third District, citing *Hoffard*, noted the multiple objectives served by the trial court eliciting the factual basis for a plea under section 1192.5 and stated: "Given these significant policy considerations, a failure to make a sufficient inquiry, while not a constitutional or jurisdictional requirement, is one of the 'other' grounds going to the legality of the proceedings in the trial court. Even though a

---

to the no contest plea, a magistrate had refused to hold him to answer on that charge. (*Wallace, supra,* 33 Cal.4th at p. 748.) The Supreme Court concluded that the trial court could not look beyond the no contest plea. (*Id.* at p. 750.)

The Supreme Court has subsequently observed, "*Wallace* does not stand for the broad proposition asserted by the Attorney General; namely, that a defendant's stipulation to a factual basis constitutes a binding admission for all purposes." (*People v. French* (2008) 43 Cal.4th 36, 52 [73 Cal.Rptr.3d 605, 178 P.3d 1100].)

[11] In *People v. Zamora* (1991) 230 Cal.App.3d 1627, 1632–1634 [282 Cal.Rptr. 100], the Fifth District refused to reach the merits of a claim that a factual basis for a plea was absent because the defendant had not obtained a certificate of probable cause. (*Id.* at pp. 1632–1634.)

defendant may in fact be guilty of the offense to which he pleads guilty, given the policy considerations underlying the intent behind section 1192.5, an adequate inquiry into the factual basis for the plea addresses broader issues such as the voluntariness of the plea and a knowing decision to plead guilty. A sufficient factual inquiry must be considered a necessary component of the legality of the proceedings. To decide otherwise would preclude review of the factual basis for a plea of guilty or no contest thereby frustrating the policies the statute is intended to advance. Thus, defendant's claim that the factual inquiry undertaken here was insufficient is, after issuance of a certificate of probable cause, cognizable on appeal." (*Marlin, supra,* 124 Cal.App.4th at p. 571.)

Several reasons preclude us from subscribing to this conclusion. First, it does not appear from the *Marlin* opinion that the People contended that the appellate court was precluded from considering whether there was a factual basis for the plea. In other words, this passage is dictum. Second, perhaps because it was not a contested issue, there was no discussion of *Westbrook.* Third, there was no attempt to distinguish the authority holding that following a plea of guilty or no contest, issues concerning the defendant's guilt or innocence, such as the sufficiency of the evidence of guilt, are not cognizable on appeal. Fourth, it proves both too much and too little to state that, if the factual basis of a plea is not reviewed on appeal, then the issue will avoid appellate review. The same could be said of every issue that is waived or forfeited by a criminal defendant, such as the sufficiency of the evidence of guilt after a guilty plea.

We recognize that any number of appellate opinions have reached the merits of an appellant's claim that there was no factual basis for his or her plea of guilty or no contest. (E.g., *People v. Watts* (1977) 67 Cal.App.3d 173, 179–182 [136 Cal.Rptr. 496] [Fourth Dist., Div. 3]; *People v. Tigner* (1982) 133 Cal.App.3d 430, 435 [184 Cal.Rptr. 61] [Fifth Dist.]; *People v. Gonzalez* (1993) 13 Cal.App.4th 707, 714–715 [16 Cal.Rptr.2d 635] [Second Dist., Div. 7].) Indeed, the same court that authored *Westbrook* did so in the earlier opinions of *People v. Ivester* (1991) 235 Cal.App.3d 328, 338–339 [286 Cal.Rptr. 540], and *People v. Enright* (1982) 132 Cal.App.3d 631, 635 [183 Cal.Rptr. 249]. This court also did so in *People v. Mickens* (1995) 38 Cal.App.4th 1557 [45 Cal.Rptr.2d 633], which was decided before *Westbrook* or *Marlin.*[12]

---

[12] In *People v. Mickens, supra,* 38 Cal.App.4th 1557, defense counsel stipulated to a factual basis for a guilty plea. (*Id.* at p. 1560.) The opinion does not quote the words used at the change of plea hearing. We reviewed authority concerning what was an adequate factual basis for a plea, including *People v. Wilkerson* (1992) 6 Cal.App.4th 1571 [8 Cal.Rptr.2d 392] (*Wilkerson*) (*People v. Mickens, supra,* 38 Cal.App.4th at pp. 1563–1564) and concluded that "the better practice would have been for the trial court to '[attempt] to ensure the existence of

The most significant example of reaching the merits of this issue is *Holmes, supra,* 32 Cal.4th 432, in which the Supreme Court granted review "to consider whether the trial court established a sufficient factual basis for defendant's guilty plea as required by section 1192.5. In doing so, we provide guidelines for the trial courts regarding how to comply with their obligations under section 1192.5 and what constitutes a 'factual basis for the plea.' " (*Id.* at pp. 435–436.) The Supreme Court not only provided guidelines for the trial courts, but also for appellate review, by establishing "the standard of review to be applied to a determination of an adequate factual basis for a plea." (*Id.* at p. 442.) *Holmes* was decided after *Westbrook* but before *Marlin.*

■ We note that in none of these cases, including *Holmes,* was the issue raised whether the appellant was estopped from questioning the factual basis of his or her plea.[13] "Cases are not authority for propositions they do not consider." (*People v. Martinez* (2000) 22 Cal.4th 106, 118 [91 Cal.Rptr.2d 687, 990 P.2d 563].) Moreover, in some of these cases, there was a complete failure by the trial court to conduct any inquiry under section 1192.5 into the factual basis of the plea. (*People v. Watts, supra,* 67 Cal.App.3d 173, 178; *People v. Tigner, supra,* 133 Cal.App.3d 430, 435.)

■ We do not believe that a plea of guilty or no contest forecloses a defendant from challenging the *procedure* that resulted in the plea. A trial court's alleged complete failure to conduct the required inquiry does not concern the defendant's guilt or innocence or the sufficiency of the evidence of guilt. To paraphrase *Marlin,* in light of the policies served by the inquiry requirement, a failure to make *any* inquiry, "while not a constitutional or jurisdictional requirement, is one of the 'other' grounds going to the legality of the proceedings in the trial court." (*Marlin, supra,* 124 Cal.App.4th 559, 571.) For example, in *People v. McGuire* (1991) 1 Cal.App.4th 281 [1 Cal.Rptr.2d 846], the appellate court simply examined the process by which the trial court established the existence of a factual basis, namely obtaining admissions from the defense attorney and the prosecutor. (*Id.* at p. 283.) Similarly, what we regard as the first part of the opinion in *Wilkerson, supra,* 6 Cal.App.4th 1571 focused on whether the trial court had said enough to amount to the statutory inquiry. (*Id.* at p. 1577.) Whether there was an inquiry of the kind required by the statute is a procedural question.

a factual basis' for this guilty plea." (*Id.* at p. 1565.) We characterized what the trial court did as a "failure to comply with the dictates of section 1192.5," but concluded that it was a harmless error because the probation report "could have supported a factual basis finding." (*Ibid.*)

[13] *People v. Gonzalez, supra,* 13 Cal.App.4th 707 identified other issues that were foreclosed on appeal by the defendant's guilty plea, but did not discuss whether this principle applied to the plea's factual basis. (*Id.* at pp. 713–715.)

In *Holmes, supra,* 32 Cal.4th 432, the Supreme Court's review was similarly limited to the nature of the inquiry conducted by the trial court. Though the trial court "did not conduct an extensive inquiry with defendant to develop the factual basis on the record, nor did it request that defense counsel stipulate to a particular document that provides an adequate factual basis" (*id.* at p. 443), it did ask the defendant "if he did what was described in the complaint" before concluding that there was a factual basis for his plea (*ibid.*). Since the complaint included not only general allegations but some factual details of the crimes, the Supreme Court concluded that the trial court's inquiry was "sufficient under the section 1192.5 standard." (*Ibid.*) Interestingly, the Supreme Court did not rely on a written stipulation in the plea form to a factual basis. (*Id.* at p. 437.) It appears to us that *Holmes* reviewed the process of inquiry employed by the trial court and not whether there was independent evidence corroborating the defendant's admissions.

On the other hand, when the trial court does make an inquiry on the record as to the factual basis for a plea, an appellate claim that the inquiry was not "sufficient" or "adequate" is often, as it was in *Marlin,* essentially a challenge not to the trial court's process but to its ultimate conclusion that there was a factual basis for the plea. In such a case, the defendant's position is concerned with the sufficiency of the evidence of his or her guilt. A defendant who belatedly disputes the existence of evidence of his or her guilt is making a substantive, not a procedural, claim.

An example is what we regard as the second half of the *Wilkerson* opinion, which did not end with the appellate court determining that there was no error in the trial court having obtained a stipulation that the police reports included in the complaint contained a factual basis for the no contest pleas. (*Wilkerson, supra,* 6 Cal.App.4th 1571, 1577.) Instead, the Fifth District proceeded to review the police reports to determine if there was "evidence of force or duress which would justify conviction under section 288, subdivision (b) as opposed to section 288, subdivision (a)." (*Id.* at p. 1578.) The appellate court ultimately concluded that there was a factual basis for finding that duress was involved in the four section 288, subdivision (b) counts. (*Wilkerson,* at pp. 1578–1580.) Similarly, *Marlin, supra,* 124 Cal.App.4th 559, reviewed the preliminary hearing transcript to find the factual basis of the plea. (*Id.* at p. 572.)

It is our position that an appellate court should not engage in a substantive review of whether there is an evidentiary or factual basis for a defendant's no contest plea simply because the defendant contradicts on appeal what he admitted in the trial court. The doctrine of judicial estoppel appears apt. " ' " 'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by

taking an incompatible position. . . .' " [Citation.] The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." [Citations.]' " (*People v. Castillo* (2010) 49 Cal.4th 145, 155 [109 Cal.Rptr.3d 346, 230 P.3d 1132].) In *People v. Castillo* the Supreme Court found a written stipulation by a district attorney to be binding under the doctrine of judicial estoppel. (*Id.* at pp. 169–170.)　■　A party may be relieved from a binding stipulation that "was entered into as the result of fraud, misrepresentation, mistake of fact, or excusable neglect." (*People v. Trujillo* (1977) 67 Cal.App.3d 547, 555 [136 Cal.Rptr. 672].)

In this appeal, defendant does not claim on appeal that his six no contest pleas resulted from any mistake or ignorance. He does not challenge the trial court's ruling denying his motion to withdraw his plea. He does not claim that the trial court neglected to conduct any inquiry into the factual basis of his plea.[14] On appeal, he contends that "the plea bargain was invalid because

---

[14] Defendant does quibble with whether he entered into a stipulation. *Holmes, supra,* 32 Cal.4th 432 explained that one way for the trial court to satisfy itself of the existence of the factual basis for a plea is to ask defense counsel to "stipulate to a particular document that provides an adequate factual basis." (*Id.* at p. 442.) Defendant asserts that "[t]here was not a stipulation that there was a factual basis" in this case, because, after defense counsel agreed to stipulate that the preliminary hearing transcript contained a factual basis for the pleas, the prosecutor said, "Yes, Your Honor, and the police report?" Defendant has in mind that "the term 'stipulation' normally refers to an agreement between attorneys" (*In re Horton* (1991) 54 Cal.3d 82, 94 [284 Cal.Rptr. 305, 813 P.2d 1335]) so that when the attorneys do not agree, there is no stipulation.

We acknowledge that there may be many situations where an evidentiary stipulation results from a negotiated agreement between the prosecutor and defense counsel. However, there are some situations where the prosecutor must accept the defendant's stipulation to the existence of certain facts. (E.g., *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [279 Cal.Rptr. 847, 807 P.2d 1076] ["Under established case law discussed above applying sections 666, 1025, and 1093, defendant had a right to stipulate to the prior conviction and incarceration and thereby preclude the jury from learning of the fact of his prior conviction."]; *People v. Washington* (1979) 95 Cal.App.3d 488, 491–492 [157 Cal.Rptr. 58] [knowledge of nature of narcotic based on prior experience, including prior conviction].) Our point is that some stipulations by defense counsel do not require the prosecutor's assent. *Holmes* does not specify that, in order for defense counsel to validly stipulate that a document reflects the factual basis for a plea, the prosecutor must approve of the defense stipulation.

In any event, whether or not defense counsel's concession that there was a factual basis for defendant's pleas technically qualifies as a "stipulation," there is no doubt that it must be regarded as an admission by defendant. It was made in defendant's presence with defendant's apparent assent. It is "settled that a party is bound by a stipulation or admission in open court of his counsel, and, except where a constitutional proscription is involved, he cannot mislead the court by seeming to take a position on the issues and then disputing or repudiating the position on appeal." (*In re Francis W.* (1974) 42 Cal.App.3d 892, 903 [117 Cal.Rptr. 277].)

there was not a factual basis for the pleas to counts one through four." (Boldface and capitalization omitted.) He asks us to conduct our own review of the preliminary hearing transcript and the police reports and conclude that the trial court erred or abused its discretion in finding the existence of a factual basis for the pleas. In other words, defendant is essentially claiming that there is insufficient evidence that his crimes involved force or duress. For the reasons stated above, we decline to engage in a substantive review of defendant's guilt or innocence.

### 5. Fine and Assessments

As indicated above, the Attorney General concedes that the trial court erred in imposing a $500 fine pursuant to section 290.3, subdivision (a). While this amount has been the appropriate fine for a second and subsequent conviction of violating section 288 since 2007 (Stats. 2006, ch. 337, § 18, p. 2610), at the time of defendant's crimes, from 1997 through 2003, the statute provided for a $300 fine for a second conviction, unless the court found the defendant unable to pay (Stats. 1995, ch. 91, § 121, pp. 346–347). The fine, to avoid being ex post facto, must be reduced to $300. (*People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248 [92 Cal.Rptr.3d 13].)

At sentencing the court orally imposed this fine "plus penalty assessment" without specifying the amount of the assessment. The minute order of the hearing and the abstract of judgment identify a "PA" (presumably penalty assessment) amount as $1,325.

Defendant attacks the procedure by which the penalty assessment was imposed, citing *People v. Zackery* (2007) 147 Cal.App.4th 380 [54 Cal.Rptr.3d 198] (*Zackery*) for the proposition that the court is required in open court to specify the amount of the assessments, surcharges, and penalties. The Attorney General does not respond to this point.

We read *Zackery* to stand for a different proposition. In that case, the trial court clerk included in the minutes of a sentencing hearing a restitution fine of $200 pursuant to section 1202.4 and an additional suspended parole revocation fine of $200 pursuant to section 1202.45, although the trial court had not orally imposed either fine. The appellate court recognized that the statute mandates imposition of a minimum $200 fine unless the trial court "finds compelling and extraordinary reasons for not doing so, and states those reasons on the record." (§ 1202.4, subd. (c).) Because the trial court has some discretion to avoid imposing the fine, the appellate court reasoned that the restitution fine should "be pronounced orally in the presence of the defendant" to give the defendant an opportunity to object. (*Zackery, supra,* 147 Cal.App.4th at pp. 388–389.) *Zackery* did not involve imposition of a penalty assessment.

*People v. Sharret* (2011) 191 Cal.App.4th 859 [120 Cal.Rptr.3d 195] (*Sharret*) did involve imposition of penalty assessments. The Second District Court of Appeal (Div. 5) stated: "The trial court orally imposed the $50 criminal laboratory analysis fee ([Health & Saf. Code, ]§ 11372.5) and the $150 drug program fee ([Health & Saf. Code, ]§ 11372.7) *'plus penalty assessment.'* (Italics added.) The oral pronouncement of judgment controls over any discrepancy with the minutes or the abstract of judgment. [Citations.] In Los Angeles County, trial courts frequently orally impose the penalties and surcharge discussed above by a shorthand reference to 'penalty assessments.' The responsibility then falls to the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes and, more importantly, the abstract of judgment. This is an acceptable practice." (*Id.* at p. 864.) *Sharret* proceeded to find applicable the seven penalty assessments identified in that court's earlier *People v. Castellanos* (2009) 175 Cal.App.4th 1524 [98 Cal.Rptr.3d 1] (*Castellanos*) decision. (*Sharret, supra*, 191 Cal.App.4th 859, 864.)

We recognize that *Sharret* arose in the context of a *Wende* appeal and that the appellate court asked the parties to brief other issues related to the imposition of crime lab and drug program fees, penalties, and surcharges, not including the issue whether a general oral reference to penalty assessments is sufficient. (*Sharret, supra*, 191 Cal.App.4th 859, 863.) But the court's approval of the practice was doubtless deliberate, and it is reasonable, considering that many of these assessments, surcharges, and penalties are mandatory and are often imposed on appeal in the first instance to correct an otherwise unauthorized sentence. Indeed, in *People v. Stewart* (2004) 117 Cal.App.4th 907 [12 Cal.Rptr.3d 171], the same court had concluded that the failure to impose penalty assessments under section 1464 and Government Code section 76000 is a jurisdictional error that may be raised for the first time on appeal and corrected. (*Stewart*, at p. 912.)

We conclude that the trial court adequately pronounced judgment by imposing a specific fine and generally referring to the applicable penalty assessments.

Defendant also argues for a reduction in that assessment. Since the amount of the total assessment is dependent on the amount of the underlying fine, defendant is entitled to relief, as the Attorney General concedes.

*Castellanos, supra*, 175 Cal.App.4th 1524 pointed out that a $10 theft fine under section 1202.5 was subject to seven different penalties and surcharges in Los Angeles County, namely (1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)), (2) a 20 percent state surcharge (§ 1465.7), (3) a 30

percent state courthouse construction penalty (Gov. Code, § 70372),[15] (4) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)), (5) a 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)), (6) a 10 percent additional penalty " '[F]or the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act' " (Gov. Code, § 76104.6, subd. (a)(1)), and (7) a 10 percent additional state-only penalty to finance Department of Justice forensic laboratories (Gov. Code, § 76104.7). (175 Cal.App.4th at pp. 1528–1530.)

In other words, there are seven assessments, surcharges, and penalties parasitic to an underlying fine that could increase the fine by 280 percent.[16] The assessment total in our case, $1,325, was 265 percent of the $500 fine. Two hundred eighty percent of a $300 fine is $840, while 265 percent is $795.

As defendant points out and the Attorney General concedes, several of these punitive fundraising measures took effect after defendant's crimes were committed between October 7, 1997 (R.'s sixth birthday) and May 2, 2003 (A.'s 13th birthday). *High, supra,* 119 Cal.App.4th 1192 concluded that section 1465.7 (effective Sept. 30, 2002) and Government Code section 70372 (effective Jan. 1, 2003) impose punishment and cannot be constitutionally applied retroactively. (*High,* at pp. 1197–1199.) Following *High, People v. Batman* (2008) 159 Cal.App.4th 587, 591 [71 Cal.Rptr.3d 591], concluded that Government Code section 76104.6 (eff. Nov. 3, 2004) cannot be applied retroactively. Based on the logic of these decisions, the Attorney General concedes that the penalties under Government Code sections 76000.5 (eff. Jan. 1, 2007), 76104.6, and 76104.7 (eff. July 12, 2006) cannot be imposed on defendant.

Thus, the only penalties apparently applicable to defendant's $300 fine are the 100 percent penalty assessment under section 1464, the 20 percent surcharge under section 1465.7, the 70 percent additional penalty under Government Code section 76000, and the courthouse construction penalty under Government Code section 70372. Identifying the amount of the courthouse construction penalty is not as straightforward as the others.

---

[15] We will shortly explain that this penalty was reduced in *Castellanos* from a maximum of 50 percent.

[16] Although *People v. High* (2004) 119 Cal.App.4th 1192 [15 Cal.Rptr.3d 148] (*High*) described the need for specifying in the abstract of judgment the amount of every fine, fee, and penalty to facilitate governmental efforts to collect and properly distribute the amounts (*id.* at p. 1200), the abstract of judgment form used in this case (CR-290, rev. Jan. 1, 2007) provides four blank lines for "PA per PC 1202.5," four more for "PA per HS 11372.5," four more for "PA per HS 11372.7(a)," and no specific lines for any of these seven penalties and surcharges.

"Except as otherwise provided in subdivision (b) of Section 70375," the state court construction penalty is 50 percent (Gov. Code, § 70372, subd. (a)(1)), but it is subject to reduction by a county "as provided in subdivision (b) of Section 70375." (Gov. Code, § 70372, subd. (a)(2).) As the Second District Court of Appeal (Div. 5) explained in *People v. McCoy* (2007) 156 Cal.App.4th 1246 [68 Cal.Rptr.3d 134] (*McCoy*), for a period of time Government Code section 70375, subdivision (b) authorized two potential reductions in the 50 percent state court construction penalty, one the amount collected for deposit into a local courthouse construction fund pursuant to Government Code section 76100, and the other the amount collected for the "Transitional State Court Facilities Construction Fund" to the extent it is funded by the local courthouse construction fund. (*McCoy, supra,* at pp. 1252–1253; Stats. 2002, ch. 1082, § 4, pp. 6976, 6996; Stats. 2003, ch. 592, § 18, p. 4491.) By reference to a chart included in Government Code section 76000, subdivision (e) that reflected the amounts various counties were collecting for local courthouse construction, *McCoy* concluded that Los Angeles County had, by virtue of its local courthouse collections, effectively reduced the 50 percent maximum to a 30 percent penalty assessment for state courthouse construction. (*McCoy, supra,* 156 Cal.App.4th 1246, 1254.) It was this reduction that was later applied by the same court in *Castellanos*.

Following the reasoning of *McCoy*, we note that the version of Government Code section 76000, subdivision (e) applicable in 2003, when defendant's last crime was committed,[17] indicates that Santa Clara County was collecting $1.50 from the $7 penalty in Government Code section 76000 for local courthouse construction. (Stats. 2002, ch. 1082, § 5, p. 7002.) In other words, the state court construction fee of $5 per $10 fine was reduced to $3.50, or 35 percent, at that time. Following *High*, we apply the statutes (Gov. Code, §§ 70372, 70375, 76000) in effect at the time of defendant's crimes in order to avoid an ex post facto expansion of defendant's punishment by later statutory amendments.[18]

---

[17] We realize that there was no clear evidence at the preliminary examination of any lewd touching by defendant of the three victims after R.'s 10th birthday in 2001, while section 1465.7 took effect on September 30, 2002, and Government Code section 70372 took effect on January 1, 2003. Nevertheless, defendant pleaded no contest to allegations that he orally copulated V. between December 6, 1998, and December 5, 2002, and he orally copulated A. twice between May 2, 1998, and May 1, 2003. Defendant's no contest plea to those allegations is an admission that the crimes occurred after the effective dates of section 1465.7 and Government Code section 70372. (Cf. *People v. Smith* (1985) 171 Cal.App.3d 997, 1004 [217 Cal.Rptr. 634] [statute of limitations].)

[18] Presumably reflecting a continuing struggle to fund courthouse construction, Government Code section 70375, subdivision (b) has been amended several times since the *McCoy* decision. A 2007 amendment seemingly codified the calculations undertaken in *McCoy*. (Stats. 2007, ch. 302, § 2.) However, an amendment effective January 1, 2009 completely eliminated further reductions for money collected for the local courthouse construction fund, while preserving

Thus, the total applicable penalties are 225 percent of the $300 fine, as defendant asserts, yielding $675.

## 6.  Disposition

The judgment is modified to impose a $300 fine under section 290.3 and a total penalty assessment of $675. The trial court is directed to prepare a new abstract of judgment and forward it to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

Rushing, P. J., concurred, and Bamattre-Manoukian, J., concurred in the judgment only.

Appellant's petition for review by the Supreme Court was denied February 15, 2012, S198732. Werdegar, J., was of the opinion that the petition should be granted.

reductions to be transmitted to the state for the Transitional State Court Facilities Construction Fund. (Stats. 2008, ch. 311, § 8.) This was the version in effect when defendant was sentenced. The most recent change, effective January 1, 2011, seems to have eliminated any reductions, thus returning the state courthouse construction penalty to its maximum of 50 percent. (Stats. 2010, ch. 709, § 4.)