Filed 5/27/14  P. v. Schoenhofen CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JAMES HOMER SCHOENHOFEN,<br><br>  Defendant and Appellant. | 2d Crim. No. B245550<br>(Super. Ct. No. 2011019271)<br>(Ventura County) |

James Homer Schoenhofen appeals a judgment following conviction of three counts of committing a lewd act upon a child under 14 years of age, one count of continuous sexual abuse of a child under 14 years of age, and one count of possession of child pornography, with findings that he engaged in substantial sexual conduct regarding three of the sexual offenses.  (Pen. Code, §§ 288, subd. (a), 288.5, subd. (a), 311.11, subd. (a), 1203.066, subd. (a)(8).)[1]  We modify the judgment to strike the no-contact order, and to reduce the sexual offender fine to $2,000, but otherwise affirm.

*FACTS AND PROCEDURAL HISTORY*

This criminal prosecution concerns lewd acts that Schoenhofen committed against his granddaughter M. from 2001 until 2010.  Count 1 concerns vaginal fondling between June 2001 and July 2003, when M. and her parents lived with Schoenhofen in Oxnard; count 3 concerns Schoenhofen forcing M. to touch his penis between August and

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

December 2003, during a family visit; count 4 concerns continuous sexual abuse from January 2004 until November 2009, during family visits; and count 5 concerns an act when Schoenhofen touched M. under her shirt during a January 2010 family visit to M.'s Upland home. Count 6 concerns Schoenhofen's possession of child pornography.

During the first few years of her life, M. and her family lived with Schoenhofen and his wife in Oxnard. In 2002 or 2003, M., her parents, and her siblings moved to Upland, but they frequently visited Schoenhofen in Oxnard.

M. testified that when she lived with Schoenhofen, he "would sit [her] on his lap and then he would unbutton whatever [she] was wearing and he'd put his hands down [her] pants." M. stated that Schoenhofen touched her vagina as he looked at nude females on the computer. These lewd acts occurred daily.

After M. moved to Upland, Schoenhofen would molest her during her family's weekend visits to his Oxnard home. When M. was a third-grader, Schoenhofen took her hand and rubbed it against his penis as he viewed pornographic images on the computer. Schoenhofen also continued to touch her vagina during weekend visits, "so many times, [M.] lost track."

In January 2010, Schoenhofen and his wife visited M. and her family in Upland to watch M.'s championship soccer game. M. testified that Schoenhofen touched her under her shirt following the game, but she nudged him away.

M.'s parents testified that on several occasions, they discovered child pornography on the Schoenhofen computer. When they questioned Schoenhofen regarding the pornography, he stated that a computer virus caused the images.

In April 2010, M. disclosed to her parents that Schoenhofen had touched her inappropriately. Several days later, M.'s parents reported her accusations to the Upland police department.

*Possession of Child Pornography*

*(Count 6)*

On September 22, 2010, Oxnard Police Detective Erica Escalante executed a search warrant at Schoenhofen's Oxnard residence. Although the hard drive of the

2

family computer had been removed, Escalante discovered numerous floppy disks in the home office. A forensics examiner later examined the disks and found 224 pornographic images of children.

*Police Interview*

Escalante interviewed Schoenhofen in Ventura County jail at approximately 5:00 p.m. on June 24, 2011. The one-hour interview was audio-recorded, and played by the prosecutor at trial.

At the inception of the interview, Schoenhofen informed Escalante that he had not eaten since breakfast nor had he received his medications. He stated that he was hungry, "shaking," and had not slept much. In response to questions, Schoenhofen replied that he was 67 or 68 years old (his 68th birthday would occur in several weeks), and that he did not know his cellular telephone number. He also stated that he had "a mental breakdown" in 2002 and now suffers from dementia.

Following advisement of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Schoenhofen admitted that he obtained child pornography over the Internet and that "sometimes [he] put [his] hand in [M's] panty." He stated that M. "liked it." Schoenhofen admitted that he touched M.'s vagina and stated that she "initiated" looking at the child pornography on the computer. He also admitted performing sodomy on neighbor child K.B. and lewd acts on K.B.'s sister, and stated that the girls were "willing": "They came to me, I didn't go to them."

*Evidence of Uncharged Sexual Offenses*

K.B. testified at trial that as a child she lived near Schoenhofen's home. She stated that Schoenhofen committed acts of oral copulation and sexual intercourse on her when she visited his home.

*Conviction and Sentencing*

The jury convicted Schoenhofen of three counts of committing a lewd act upon a child under 14 years of age, one count of continuous sexual abuse of a child under 14 years of age, and one count of possession of child pornography. (§§ 288, subd. (a),

3

288.5, subd. (a), 311.11, subd. (a).)  It also found that Schoenhofen engaged in substantial sexual conduct regarding three of the sexual offenses.  (§ 1203.066. subd. (a)(8).)

The trial court sentenced Schoenhofen to 22 years 8 months in prison, consisting of an upper 16-year term for the continuous sexual abuse conviction, three two-year terms for the three counts of lewd acts with a child, and an eight-month term for possession of child pornography, all terms to be served consecutively.  The court imposed a $1,000 restitution fine, a $1,000 parole revocation restitution fine (stayed), a $200 court security assessment, a $2,300 sexual offender fine, and a $150 criminal conviction assessment, ordered victim restitution, and awarded Schoenhofen 356 days of presentence custody credit.  (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a)(1), 290.3, subd. (a); Gov. Code, § 70373.)  The court also ordered that Schoenhofen have "no contact" with M.

Schoenhofen appeals and contends that:  1) the time period alleged for count 5 improperly overlaps the time period alleged for count 4; 2) the trial court erred by instructing with CALCRIM Nos. 1110 and 1120 because the instructions eliminate an element of the offense; 3) the trial court erred by denying his motion to suppress his interview statements as involuntary; and 4) the trial court erred in issuing a no-contact order and imposing the sexual offender fine.

*DISCUSSION*

I.

Schoenhofen argues that the time period alleged for the specific act charged in count 5 (November 1, 2009, to January 28, 2010) impermissibly overlaps the time period alleged for the continuous sexual abuse charged in count 4 (January 1, 2004, to November 1, 2010).  He asserts that section 288.5, subdivision (c) and *People v. Johnson* (2002) 28 Cal.4th 240, 248, compel reversal of count 5.

When a prosecutor charges a count of continuous sexual abuse, section 288.5, subdivision (c) proscribes charging another count of child molestation against the same victim pursuant to section 288 "unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the

4

alternative." "[S]ection 288.5, subdivision (c) clearly mandates the charging of continuous sexual abuse and specific sexual offenses, pertaining to the same victim over the same period of time, only in the alternative, [the prosecutor] may not obtain multiple convictions in the latter circumstance." (*People v. Johnson, supra*, 28 Cal.4th 240, 248.)

For several reasons, Schoenhofen has suffered no prejudice from this obvious pleading error.

First, the prosecutor informed the jury during opening argument and summation that count 4 referred to the continuous sexual abuse inflicted on M. when she visited Schoenhofen on weekends at his Oxnard home. The visits ended around 2006, and in 2009 Schoenhofen moved from Oxnard to Victorville. The prosecutor also informed the jury that count 5 concerned the touching under M.'s shirt following her championship soccer game in Upland in January 2010. Second, the continuous sexual abuse count required a finding of substantial sexual conduct and the prosecutor did not allege that special finding for the touching charged in count 5. Thus the jury was not asked to make a finding regarding substantial sexual conduct for count 5. Third, when the prosecutor requested permission to file the third amended information, she stated that the purpose of the amendment was to charge the offenses in chronological order and that the continuous sexual abuse count "cannot overlap with any other substantive sex act." (*People v. Johnson, supra*, 28 Cal.4th 240, 248 [prosecutor "may charge continuous sexual abuse and discrete sexual offenses outside the period of the alleged continuous abuse"].) Under any standard of review, the unintended error in stating November 2010, rather than November 2009, is harmless and does not offend section 288.5, subdivision (c).

## II.

Schoenhofen contends that the trial court erred by instructing with former CALCRIM Nos. 1110 ("Lewd or Lascivious Act") and 1120 ("Continuous Sexual Abuse") regarding the elements of committing lewd and lascivious conduct because the instructions are misleading and eliminate an element of the offense. Specifically, he asserts that by instructing, "The touching need not be done in a lewd or sexual manner,"

the pattern instructions negate the statutory requirement that the act be committed "willfully and lewdly." (§ 288, subd. (a).) Schoenhofen relies upon *People v. Cuellar* (2012) 208 Cal.App.4th 1067, 1071, concluding that CALCRIM No. 1120 is confusing. He argues that the instructions deny his rights to a fair trial and to due process of law pursuant to the United States and California Constitutions.

Schoenhofen has forfeited this argument because he did not object or request a clarifying instruction. (*People v. Lee* (2011) 51 Cal.4th 620, 638 ["failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal"].)

Forfeiture aside, the trial court did not err by instructing with CALCRIM Nos. 1110 and 1120 because the instructions are accurate statements of law and consistent with the decisions of our Supreme Court. (*People v. Shockley* (2013) 58 Cal.4th 400, 404 [section 288 focuses upon defendant's intent to sexually exploit a child rather than the nature of the offending act]; *People v. Martinez* (1995) 11 Cal.4th 434, 444 [same].) "[S]ection 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act." (*Martinez*, at p. 444.)

Section 288 requires a "touching" of the victim, and sexual gratification must be intended at the time of the touching. (*People v. Sigala* (2011) 191 Cal.App.4th 695, 700.) Moreover, the form, manner, or nature of the offending act is not restricted. (*Ibid.*) A lewd or lascivious act can be committed through the victim's clothing and may involve any part of the victim's body. (*Ibid.*) We agree with the analysis set forth in *Sigala*, and conclude that CALCRIM Nos. 1110 and 1120, read in their entirety, are correct statements of law.

Although the California Judicial Council has responded to the criticism in *People v. Cuellar*, *supra*, 208 Cal.App.4th 1067, 1071, by removing the criticized sentence, we conclude the instructions given here are sufficiently clear. In any event, the asserted error is harmless beyond a reasonable doubt. (*Neder v. United States* (1999) 527 U.S. 1, 15.) Schoenhofen admitted fondling M. and the charged touchings were

6

unquestionably sexual. No evidence exists that the molestations were innocent touchings or were committed without the intent of sexual gratification.

III.

Schoenhofen argues that the trial court erred by concluding that he knowingly and intelligently waived his rights pursuant to *Miranda v. Arizona*, *supra*, 384 U.S. 436, 444, during his police interview. He points out that he was 67 years old, suffers from dementia and other medical and psychological problems, had not slept much the night before, had not received food since breakfast the day of the interview, and had not received any of his prescribed medications. Schoenhofen adds that Escalante pretended to befriend him to obtain his inculpatory statements.

The federal and California Constitutions preclude the prosecution from introducing a defendant's involuntary confession into evidence at trial. (*People v. Duff* (2014) 58 Cal.4th 527, 551.) In determining whether a statement was voluntary, the trial court must consider the totality of the circumstances, including the characteristics of the defendant and the details of the interrogation. (*People v. Tully* (2012) 54 Cal.4th 952, 986.) The prosecution bears the burden of establishing by a preponderance of the evidence the voluntariness of a confession. (*Duff*, at p. 551.) Where, as here, the interview is recorded and the factual circumstances of the interview are undisputed, we may apply independent review. (*Ibid.*)

In our independent review of the one-hour recorded interview, we decide that the totality of circumstances establishes that Schoenhofen's waiver of his *Miranda* rights was knowing, intelligent, and voluntary. Schoenhofen stated that he was 67 or 68, adding that his birthday was several weeks away. Although Schoenhofen did not know his cellular telephone number, he explained that he acquired the telephone recently and his wife possessed it. He also stated that he recently moved to a rural desert area and did not know his street address.

Schoenhofen stated that he had two community college degrees and discussed his employment history and medical and psychological problems. Following the *Miranda* advisements, he stated that he might "not answer all the questions."

7

Schoenhofen later stated that he would not submit to a polygraph test. He also expressed anger regarding execution of the search warrant on his Oxnard home. Schoenhofen responded to Escalante's questions, admitted certain improper acts with M. and K.B., but insisted that he did not commit other improper acts. He asked Escalante to define child molestation and expressed surprise that possession of child pornography is illegal.

The recorded interview does not contain any evidence of coercion by Escalante. It does contain examples of laughter by them during their conversation, which the trial court described as "folksy." "Where the deception is not of a type reasonably likely to procure an untrue statement, a finding of involuntariness is unwarranted." (*People v. Farnum* (2002) 28 Cal.4th 107, 182.)

Moreover, our review of the recorded interview indicates that Escalante instructed Schoenhofen to provide an audible response to the *Miranda* advisements, when she asked if he could "say yes." There is no suggestion or evidence of coercion by her request. In view of the totality of circumstances, Schoenhofen's waiver was knowing, voluntary, and intelligent.

IV.

*Sentencing Matters*

Schoenhofen argues that the trial court erred by ordering that he have "*no contact* directly or indirectly with [M.], by person, by mail, by phone or by any other third parties." (Italics added.) He points out that section 1202.05, subdivision (a) only prohibits "all visitation" between a defendant sentenced to state prison for violation of certain sexual offenses and a victim who is less than 18 years old. The Attorney General properly concedes that the court's order prohibiting *all contact* exceeds the powers granted by section 1202.05, subdivision (a). (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1323-1325.)

Schoenhofen also contends that the trial court erred by imposing a $300 sexual offender fine for count 1, and a $500 sexual offender fine for count 3, because when he committed the crimes in 2003, section 290.3, subdivision (a) required only a $200 fine and a $300 fine respectively. The Attorney General properly concedes that the

8

total fine of $2,300 must be reduced to $2,000. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1372 [constitutional principles prohibiting ex post facto laws require application of section 290.3 in effect at time of defendant's crime].)

We modify the judgment to strike the no-contact order and reduce the sexual offender fine to $2,000, but otherwise affirm. The trial court shall prepare an amended abstract of judgment reflecting the reduced sexual offender fine and forward the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Cannon & Harris, Donna L. Harris for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, Louis W. Karlin, Deputy Attorney General, for Plaintiff and Respondent.