Filed 5/21/13  P. v. Reyes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARTIN TAPIA REYES,<br><br>    Defendant and Appellant. | H037362<br>(Santa Cruz County<br>Super. Ct. No. F18058) |

Defendant Martin Tapia Reyes appeals after conviction, by jury trial, of robbery (Pen. Code, § 211)[1] and active participation in a criminal street gang (§ 186.22, subd. (a)).  The trial court found that defendant had two prior serious felony convictions (§ 667, subd. (a)(1)) that qualified as strikes (§§ 667, subds. (b)-(i), 1170.12).

Defendant was sentenced to an indeterminate term of 25 years to life for the robbery, plus a 10-year determinate term for the prior serious felony allegations.  The trial court imposed a concurrent indeterminate term of 25 years to life for the criminal street gang offense.  It imposed a $66 crime prevention fine (§ 1202.5) as well as other fees and fines.

On appeal, defendant claims there is insufficient evidence to support his conviction of actively participating in a criminal street gang.  (§ 186.22, subd. (a).)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Based on the recent California Supreme Court case of *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), we agree that defendant's conviction of active participation in a criminal street gang must be reversed.  We also agree that this matter should be remanded for a new sentencing hearing, so the trial court can reconsider defendant's motion to dismiss his prior strikes, recalculate the fees and fines, and specify the statutory basis for the penalty assessments used to calculate the $66 fine that was imposed pursuant to section 1202.5, and award him presentence conduct credit.

## BACKGROUND

The evidence at trial concerned two separate incidents:  the robbery of a surf shop on June 28, 2009 and a jail fight on October 28, 2009.  Defendant's two convictions stemmed from the surf shop incident only, as the jury was unable to reach a verdict regarding the charges based on the jail fight.

### A.      *Surf Shop Incident*

On June 28, 2009, Kristian P. Ivanov was working at the La Selva Surf Shop.  The shop was very small – approximately seven feet wide and 20 feet deep.  It had only a front entrance.  The sales counter was in the back of the store.  Next door to the surf shop was a small grocery with a deli inside.

#### 1.      Ivanov's testimony

Ivanov was working alone in the surf shop that day.  Defendant entered the shop at around 10:30 a.m., along with Xavier Carmona.  Defendant was wearing shorts.  He had no shirt on, but he was carrying a white t-shirt in his pocket.  Defendant had a number of visible tattoos on his chest and arms.  He did not look like a typical customer.

Defendant approached Ivanov and engaged in some small talk.  Defendant indicated that he was interested in buying a pair of sweatpants for his girlfriend.  Ivanov helped defendant select a pair of sweatpants.  Meanwhile, Carmona stood in the shop's doorway, looking in and out.

Defendant told Ivanov that he was a Norteño gang member. He explained that the star tattoo on his chin symbolized his gang, and he claimed to have gotten that tattoo recently. He also claimed to have a "[f]airly high" status in the gang. Defendant said he was a tattoo artist and that he could "hook [Ivanov] up with some tattoos."

Although defendant did not appear intoxicated, he told Ivanov that he was "buzzed" or "buzzing." He asked if Ivanov could "hook him up with a marijuana dealer." Ivanov said he did not know where to find a marijuana dealer. Defendant reiterated his request and appeared to become frustrated. Defendant asked Ivanov to "hook him up," meaning give him the sweatpants or other merchandise for free. Ivanov declined.

Defendant took out the money to pay for the sweatpants. He had "a lot" of money rolled up, including $100 bills, $50 bills, and $20 bills. He gave Ivanov $40 for the sweatpants, which cost $30. Ivanov gave defendant $10 in change.

Defendant then indicated he had changed his mind about buying the sweatpants. Ivanov returned the two $20 bills that defendant had given him and asked for the two $5 bills he had given defendant as change. Defendant refused and took a second pair of sweatpants from a rack. Ivanov said defendant could not do that, but defendant responded, "I [can] do this if I want."

Although Carmona had left the shop for a few minutes, he had returned to the doorway by this time. After Ivanov refused to give defendant the sweatpants for free, Carmona said, "Come on, man. Let's just get out of here." Instead, defendant instructed Carmona to shut the door. Carmona responded, "No. Let's just get out of here." Defendant reiterated his command that Carmona shut the door, and Carmona complied. Ivanov said "stop" and said he would hook defendant up.

Defendant came behind the counter. He boxed Ivanov in and "nudged" him with his chest. Defendant said, "[D]o you want to force me to be pushed to the next level" or

3

"do you want me to get physical." He also said, "I could have robbed you." Ivanov felt intimidated.

Before leaving, defendant told Ivanov, "[P]eople like you call the police." He also said, "I will be back." Ivanov was afraid to call the police right away because he believed defendant and Carmona might come back. After ten minutes, he went to the grocery store to tell the owner what had happened. He then returned to the surf shop, where he called his manager and 911.

### 2.      Testimony of Grocery Employees

Robert Zottarelli was working as the cashier at the grocery store on June 28, 2009. At some point that morning, a young Hispanic woman came in and asked to use the bathroom, which was in the back of the store. A second female came in, said she was the other woman's cousin, and also asked to use the bathroom. Carmona came in, stood near the ice machine for a short time, then went to the back of the store.

Roxanne Carlson was working in the deli, which was in the back of the grocery store. She saw the two women go into the bathroom. Carmona came up to her shortly thereafter and asked if the women were in the bathroom. He introduced himself as "Xavier" and talked to her for a few minutes, telling her that he was "with his friends at the beach."

At about the same time, a four-door truck was parked outside the grocery store. It was playing loud music and all four doors were open. Carlson saw Carmona standing next to the truck. After the truck left, Ivanov came into the store and told Zottarelli he had been robbed.

### 3.      Investigation and Identification

Santa Cruz County Sheriff Deputy Daniel Brierley responded to a call at about 11:00 a.m. and proceeded to a spot on La Playa Boulevard near the cliffs. He saw a gray GMC Sierra pickup truck and six people: two females and four males, including

4

defendant and Carmona. Two pairs of brand new sweatpants from the surf shop were inside the truck.

Defendant was wearing shorts and had no shirt on. He had a tattoo of the word "Norteno" on the small of his back and a tattoo of a star under his lip. Carmona was wearing khaki or grey shorts. He was also wearing a red belt with a "W" on the buckle.

The two other males were named Rocha and Escobar. Rocha had tattoos on his elbows: one dot on his right elbow and four dots on his left elbow. He was wearing blue jeans and a watch with a red "N" on it.

Another deputy brought Ivanov to the cliff area. Deputy Brierley did an infield showup of defendant and Carmona only. He did not believe that Rocha or Escobar matched the descriptions provided by dispatch, although according to dispatch, one of the robbery participants was wearing blue jeans, which Rocha had on. Ivanov positively identified both defendant and Carmona.

### B. Jail Incident

On October 28, 2009, Correctional Officer Marcus Hallas was working at the Santa Cruz County jail. He escorted defendant and two other inmates (Jeremy Heredia and Carlos Zuniga) from the medical area to the N unit.

Along the way, the three inmates attacked Matt Nelson, another inmate, who was painting. Zuniga punched and kicked Nelson. Defendant threw punches and stomped at Nelson's head. Heredia was unable to connect any blows because Zuniga and defendant were in his way. The inmates ignored Officer Hallas's commands, so he used pepper spray to stop the fight. Nelson was not visibly injured, but he had some redness on his face. Nelson had claimed to be a Norteño "dropout" several years earlier.

### C. Gang Evidence

Santa Cruz County Sheriff Detective Christopher Clark testified as the prosecution's gang expert. Clark described the history of the Norteño gang as well as the code of conduct governing the gang. He explained the rivalry between Norteños and

Sureños. He described the symbols of the Norteño gang, which include a five-pointed star, the number 14 (representing that the letter "N" is the fourteenth letter of the alphabet), and the color red.

Detective Clark testified that Norteños engage in criminal activities, which "[p]rimarily" include robberies, illegal drug transactions, and violence. He testified that engaging in such criminal activity is one of the primary activities of the Norteño gang.

Detective Clark described a February 2007 incident involving Richard Juan Martinez, a Norteño gang member who was later convicted of assault with a gang enhancement. He also described a March 2007 incident involving Francisco Vasquez, a Norteño gang member who was later convicted of attempted robbery with a gang enhancement.

According to Detective Clark, defendant had a number of gang-related tattoos, including the star on his face, the Roman numeral XIV on his stomach, a Mayan figure on his chest with the number 14 on it, and the word "Norteno" across his lower back. Carmona also had gang-related tattoos, including the Roman numeral XIV on his left hand. According to Clark, Carmona had admitted involvement in a gang-related jail fight and had previously admitted he "backs up" Norteños.

Several stipulations were read to the jury. They provided:

"It is hereby stipulated between the parties that [defendant] has made the following admissions of gang affiliation to law enforcement officers: [¶] One, on May 2, 2009, [defendant] stated that he associated with a gang, and he would associate with Northerners only. He stated he would not associate with Southerners. [¶] Two, on November 25th, 2008, [defendant] stated that he associated with a gang and he would associate with Northerners only. He stated he would not associate with Southerners. [¶] Three, on August 16th, 2008, [defendant] stated that he associated with the Norteno gang and would associate with Northerners only. He stated he would not associate with Surenos. [¶] Four, on July 22, 2008, [defendant] stated that he was a Northern affiliate

6

and would associate with Northerners only. He stated he would not associate with Southerners.

"It is also hereby stipulated between the parties that defendant Martin Tapia was convicted of a felony offense listed in Penal Code section 186.22 (e) on August 2nd, 1996. The offense took place on July 21st, 1996. During the commission of the offense, [defendant] displayed a tattoo of XIV on his stomach and told witnesses he was from North Side. He was in the company of four other Norteno gang members when he committed the offense. [Defendant] was not in Santa Cruz County from 1996 to September 2002.

"It is further stipulated between the parties that defendant Martin Tapia was subsequently convicted of another felony offense listed in Penal Code section 186.22(b)[2] on September 11th, 2003. The offense took place on October 11th, 2002. [¶] During the commission of that offense, [defendant] shouted, ['']Don't come around here. I am from North Side.['] He also yelled, ['']Let me teach these Vatos a lesson. I am WVN. I have XIV across my stomach.['] He was also convicted of a gang enhancement under Penal Code section 186.22 (b) because the crime was committed for the benefit of, in association with, or at the direction of a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members. [Defendant] was not in Santa Cruz County from September 2003 until May of 2007."

### D.     Charges, Verdicts, and Sentencing

On May 20, 2010, after the trial court granted the District Attorney's motion to consolidate, the District Attorney filed a first amended information charging defendant with active participation in a criminal street gang (count 1; § 186.22, subd. (a)), robbery (count 2; § 211), assault by means likely to produce great bodily injury (count 3; former

---

[2] It appears the stipulation was intended to refer to section 186.22, subdivision (e), which lists a number of offenses that can show a " 'pattern of criminal gang activity.' "

7

§ 245, subd. (a)(1)), and resisting arrest (count 4; § 148, subd. (a)). The information alleged that counts 2 through 4 were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subds. (b) & (d)). The information further alleged that defendant had two prior serious felony convictions (§ 667, subd. (a)(1)) that qualified as strikes (§§ 667, subds. (b)-(i), 1170.12).

Codefendant Carmona was charged with active participation in a criminal street gang (§ 186.22, subd. (a)) and robbery (§ 211), with an allegation that the robbery was committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)).

A joint jury trial began on May 25, 2010.

On June 7, 2010, the jury found Carmona not guilty of both charged offenses (active participation in a criminal street gang and robbery). The jury found defendant guilty of active participation in a criminal street gang (count 1) and robbery (count 2). The jury was unable to reach a verdict on the charges of assault by means likely to produce great bodily injury (count 3) and resisting arrest (count 4). The jury made a not true finding on the allegation that the robbery was committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)). The trial court declared a mistrial as to counts 3 and 4, and it ultimately dismissed those counts upon the prosecutor's motion. The trial court found all of the prior conviction allegations true.

At the sentencing hearing on July 29, 2010, the trial court sentenced defendant to a term of 25 years to life for the robbery, plus a 10 year determinate term for the two prior serious felony allegations. It imposed a concurrent term of 25 years to life for the crime of actively participating in a criminal street gang. The trial court ordered defendant to pay a $10,000 restitution fine (§ 1202.4, subd. (b)), a suspended $10,000 parole revocation fine (§ 1202.45), a $60 court security fee (§ 1465.8), a $60 critical needs fee (Gov. Code, § 70373), and a $66 crime prevention fine (§ 1202.5).

8

## DISCUSSION

### A.        *Active Participation in a Criminal Street Gang*

Section 186.22, subdivision (a) provides:  "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

"The elements of the gang participation offense in section 186.22(a) are:  First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)"  (*Rodriguez, supra,* 55 Cal.4th at p. 1130.)

Defendant contends the prosecution presented insufficient evidence of each element of the offense:  (1) his active participation; (2) his knowledge of the pattern of criminal gang activity; and (3) his "willful promotion, furtherance, or assistance" of "felonious criminal conduct" by members of the gang.  (*Rodriguez, supra,* 55 Cal.4th at p. 1130; see § 186.22, subd. (a).)  Defendant also claims there was insufficient evidence that one of the "primary activities" of the Norteño gang (§ 186.22, subd. (f)) is the commission of the predicate offenses listed in section 186.22, subdivision (e).

In *Rodriguez,* the California Supreme Court held that a gang member does not violate section 186.22, subdivision (a) if he or she "commits a felony, but acts alone[.]" (*Rodriguez, supra,* 55 Cal.4th at p. 1128.)  In order to violate section 186.22, subdivision (a), the requisite "felonious criminal conduct" (§ 186.22, subd. (a)) must "be committed by at least two gang members."  (*Rodriguez, supra,* 55 Cal.4th at p. 1132.)

9

We requested supplemental briefing on *Rodriguez,* which was filed after the original briefing was completed in this case. Defendant argues, and the Attorney General concedes, that *Rodriguez* supports his claim that the prosecution presented insufficient evidence that he "willfully promote[d], further[ed], or assist[ed] in . . . felonious criminal conduct by members of [the Norteño] gang." (§ 186.22, subd. (a).) As we shall explain, we will accept the Attorney General's concession.

The *Rodriguez* defendant was a Norteño gang member who committed an attempted robbery. "There was no evidence that [the] defendant acted with anyone else." (*Rodriguez, supra,* 55 Cal.4th at p. 1129.) He contended that he could not be convicted of violating section 186.22, subdivision (a) because he did not "promote[], further[], or assist[]" any felonious criminal conduct by members of the gang. (§ 186.22, subd. (a).) The California Supreme Court agreed.

The Supreme Court found it "significant that the offense requires a defendant to promote, further, or assist *members* of the gang." (*Rodriguez, supra,* 55 Cal.4th at p. 1131.) Based on the plain meaning of the plural noun "members," the court held that the statute "requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he [or she] is a gang member. [Citation.]" (*Id.* at p. 1132.) The court found that "[i]f the Legislature had intended to criminalize any felonious criminal conduct committed by any active and knowing participant, including one acting alone, the phrase 'by members of that gang' would be superfluous." (*Id.* at p. 1133.)

The instant case is somewhat different from *Rodriguez*, since the jury did not necessarily find that defendant "acted alone." (*Rodriguez, supra,* 55 Cal.4th at p. 1139.) Here, defendant was accompanied by a second person. The prosecution sought to prove that the second person was Carmona, that Carmona was a fellow Norteño gang member, and that Carmona aided and abetted the robbery by shutting the door upon defendant's command.

10

However, the jury rejected the prosecution's case regarding Carmona.  Since Carmona's defense was misidentification, the jury may not have believed that Carmona was the second person present during the robbery.  Alternatively, the jury may have believed that Carmona was the second person present during the robbery, but that he did not actually aid and abet the robbery.  Either way, the prosecution failed to prove defendant "willfully promote[d], further[ed], or assist[ed] in . . . felonious criminal conduct by members of [the Norteño] gang."  (§ 186.22, subd. (a).)

*Rodriguez* establishes that in order to violate section 186.22, subdivision (a), the requisite "felonious criminal conduct" (§ 186.22, subd. (a)) must "be committed by at least two gang members."  (*Rodriguez, supra,* 55 Cal.4th at p. 1132.)  Because the jury found Carmona not guilty of the robbery, it necessarily rejected the prosecution's proof that the robbery was "committed by at least two gang members."[3]  (*Ibid.*)  Thus, there was insufficient evidence to support defendant's conviction of violating section 186.22, subdivision (a).  The Attorney General concedes that defendant's conviction on count 1 must be reversed.[4]  Although retrial of that count is barred (see *Burks v. United States* (1978) 437 U.S. 1, 18; *People v. Hatch* (2000) 22 Cal.4th 260, 272), we will remand for resentencing on the robbery count.

### B.      Motion to Dismiss Strikes

Prior to sentencing, defendant filed a *Romero* motion, requesting the trial court dismiss one or both strike allegations.  (*People v. Superior Court* (*Romero*) (1996) 13

---

[3] Notably, by finding the allegation pursuant to section 186.22, subdivision (b) not true, the jury also rejected the prosecution's proof that the robbery was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."

[4] Because we are reversing defendant's conviction of violating section 186.22, subdivision (a), his claim that the trial court should have stayed the sentence on that count pursuant to section 654 is moot.  Likewise, we need not address defendant's other challenges to his conviction of violating section 186.22, subdivision (a).

Cal.4th 497.)  In the motion, defendant argued that the offenses were "non-violent," noted that he had not used a weapon, and claimed the robbery was unplanned.  He further claimed to be remorseful, and he argued that he had good prospects for employment.  At the sentencing hearing, defendant reiterated these points and added that he had committed the crimes due to intoxication.  He pointed out that one of his prior felonies had occurred about 15 years earlier, when he was only 21 years old.

In denying the *Romero* motion, the trial court noted that defendant – who was age 36 at the time – was "fairly old for somebody who still is caught up in criminal street gangs."  It noted that it had considered defendant's criminal history, background, character, and prospects, but that defendant did not fall outside the spirit of the Three Strikes law.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161.)

In his opening brief, defendant argued that the trial court abused its discretion by declining to dismiss one or both of the strike allegations for sentencing purposes.  In his supplemental brief discussing the impact of *Rodriguez* on his conviction of violating section 186.22, subdivision (a), defendant argued that if we reverse that conviction, we should remand for reconsideration of his *Romero* motion.  We agree that remand is appropriate in this situation.

" '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]"  (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

Here, the trial court necessarily considered "the nature and circumstances of [defendant's] present felonies" when it decided his *Romero* motion. (*Carmony, supra,* 33 Cal.4th at p. 377.) It is unclear whether the trial court would have reached a different result if defendant had been convicted of robbery (count 2) only. In light of our reversal of defendant's conviction of active participation in a street gang, we believe it is appropriate to remand the matter to the trial court for reconsideration of the *Romero* motion as to count 1.[5] We express no opinion whether, without defendant's conviction of violating section 186.22, subdivision (a), the circumstances of this case are so " 'extraordinary' " that defendant " 'can be deemed to fall outside the spirit' " of the Three Strikes law. (*Carmony, supra,* at p. 378.)

### C. Custody Credits

At sentencing, the trial court awarded defendant 402 days of actual presentence custody credit. (See § 2900.5.) It did not award him any presentence conduct credit (see § 4019), "[b]ased on the indeterminate sentencing."

Defendant contends he was entitled to presentence conduct credit, and the Attorney General agrees. "The circumstance that a defendant is sentenced to an indeterminate sentence does not preclude the earning of presentence conduct credit. [Citations.]" (*People v. Duff* (2010) 50 Cal.4th 787, 793 (*Duff*).) The parties also agree that defendant was limited to accruing presentence conduct credits at a rate of "15 percent of the actual period of confinement." (§ 2933.1, subd. (c); see *Duff, supra,* at p. 794.)

We find defendant's contention meritorious and the Attorney General's concession appropriate. We will therefore order the trial court to award defendant presentence conduct credit.

---

[5] If the trial court once again denies the *Romero* motion, defendant can appeal from the new judgment and may argue, if appropriate, that the denial was an abuse of discretion. (See *People v. Murphy* (2001) 88 Cal.App.4th 392, 394.)

13

### D. Section 1202.5 Fine and Penalty Assessments

At sentencing, the trial court imposed a fine of $66 pursuant to section 1202.5, which provides for a $10 fine upon conviction of certain offenses, including robbery,[6] but is subject to certain mandatory penalty assessments. (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1374 (*Voit*).) Defendant contends the fine was improperly calculated and that we should remand the matter to the trial court with instructions to correctly calculate the fine.

Respondent contends that this claim was forfeited by defendant's failure to object below. We disagree. The trial court's duty to articulate all fines and fees in the abstract of judgment is intended not only to benefit the defendant, but also to assist state and local agencies in their collection obligations. (*People v. High* (2004) 119 Cal.App.4th 1192, 1200 (*High*).) The trial court's duty to state and local agencies cannot be waived by the defendant.

Respondent concedes that remand is appropriate if this claim was not forfeited, since the statutory basis for the penalty assessments is not clear on the record nor set out in the abstract of judgment. (See *High, supra,* 119 Cal.App.4th at p. 1200.)

In *Voit*, we noted that a $10 theft fine under section 1202.5 may be subject to the following penalties and surcharges: "(1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)), (2) a 20 percent state surcharge (§ 1465.7), (3) a 30 percent state courthouse construction penalty (Gov. Code, § 70372), (4) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)), (5) a 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)), (6) a 10 percent additional penalty ' "[F]or the purpose of implementing the

---

[6] Section 1202.5, subdivision (a) provides in pertinent part: "In any case in which a defendant is convicted of any of the offenses enumerated in Section 211, 215, 459, 470, 484, 487, 488, or 594, the court shall order the defendant to pay a fine of ten dollars ($10) in addition to any other penalty or fine imposed."

DNA Fingerprint, Unsolved Crime and Innocence Protection Act" ' (Gov. Code, § 76104.6, subd. (a)(1)), and (7) a 10 percent additional state-only penalty to finance Department of Justice forensic laboratories (Gov. Code, § 76104.7).  [Citation.]" (*Voit, supra,* 200 Cal.App.4th at pp. 1373-1374, fn. omitted.)  Together with the base fine of $10, the total of these amounts would be less than the $66 that the trial court imposed.

Defendant points out that the Government Code section 76104.7 penalty amount increased after he committed his offense in 2009.  At that time, the fine was "one dollar ($1) for every ten dollars ($10)."[7]  (Stats. 2007, ch. 302 (S.B. 425), § 8.)  We agree that defendant is not subject to any subsequent increase in that or any other penalty amount due to the constitutional prohibition against ex post facto laws.  (*Voit, supra,* 200 Cal.App.4th at p. 1374, see also *High, supra,* 119 Cal.App.4th at pp. 1197-1199 and *People v. Batman* (2008) 159 Cal.App.4th 587, 591.)

Because we are reversing defendant's conviction of active participation in a criminal street gang and remanding for further proceedings, the trial court will have the opportunity to determine the appropriate penalty assessments imposed upon the section 1202.5 fine and state the statutory basis for any assessments and surcharges imposed. (See *High, supra,* 119 Cal.App.4th at p. 1200.)

## DISPOSITION

The conviction on count 1 (§ 186.22, subd. (a)) is reversed.  The matter is remanded for resentencing on count 2 (§ 211).  At the new sentencing hearing, the trial court shall (1) reconsider defendant's *Romero* motion (*People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th 497), (2) separately list, with the statutory basis, the penalty

---

[7] The fine has been raised incrementally and now stands at "four dollars ($4) for every ten dollars ($10)."  (Gov. Code, § 76104.7; see Stats. 2012, ch. 32 (S.B. 1006), § 25, eff. June 27, 2012.)

assessments and surcharges imposed on the section 1202.5 fine, (3) recalculate the other fees and fines, and (4) award defendant presentence conduct credit.


_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:




_____
PREMO, ACTING P.J.




_____
GROVER, J.


16