Filed 6/18/13  P. v. Harris CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DARROLYNN PATRICIA HARRIS, <br><br> Defendant and Appellant. | H038155 <br> (Monterey County <br> Super. Ct. Nos. SS101403A, <br> SS102580A) |

Defendant Darrolynn Patricia Harris pleaded no contest to numerous counts of unlawfully possessing prescription drugs and possessing prescription drugs for sale. She was placed on probation, with execution of a 12-year sentence suspended. After the trial court found she violated the terms of her probation, it ordered her to serve the 12-year sentence.

On appeal, defendant contends the trial court erred by finding she violated her probation. Alternatively, she contends that the trial court abused its discretion by ordering her to serve the 12-year prison term rather than reinstating probation. For reasons that we will explain, we disagree with defendant's contentions but will modify the judgment with respect to some of the fees and fines imposed.

## BACKGROUND

### A. Criminal Offenses

On April 30, 2010, officers executed a search warrant at defendant's home. They located a number of prescription bottles containing various amounts of hydrocodone, diazepam, Soma, and Oxycontin. They also found a pouch containing a mixture of pills plus $855. Defendant had prescriptions from different pharmacies. She claimed the prescription pills were "to control her back pain due to recent surgery." However, she admitted giving some pills to "friends who needed them for their pain."

On October 22, 2010, officers executed another search warrant at defendant's home. They located numerous prescription medications, including 323 Oxycontin pills and 479 hydrocodone pills. They also found $2,499 in cash and plastic baggies in a dresser drawer.

### B. Charges, Pleas, and Initial Sentencing Hearing

On January 24, 2011, the District Attorney filed two informations with charges stemming from the two searches of defendant's home.

In case No. SS101403, defendant was charged with possession for sale of hydrocodone (counts 1 & 4; Health & Saf. Code, § 11351[1]); possession of hydrocodone (count 2; § 11350, subd. (a)); and possession for sale of diazepam (count 3; § 11375, subd. (b)(1)).

In case No. SS102580, defendant was charged with possession for sale of Oxycontin/oxycodone/hydrocodine (count 1; § 11351) and possession for sale of Alprazolam (count 2; § 11375, subd. (b)).

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

Both informations alleged that defendant was previously convicted of three offenses involving possession of a controlled substance.[2]  (§ 11370.2, subd. (a).)  In case No. SS102580, the information alleged that defendant committed an offense while released on her own recognizance or on bail in case No. SS101403.  (§ 12022.1.)

On July 20, 2011, defendant pleaded no contest to all counts and admitted all special allegations in both cases, on the condition that she receive a suspended prison sentence with felony probation.

At the sentencing hearing on July 29, 2011, the trial court imposed a 12-year aggregate prison term.  In case No. SS101403, it imposed the three year midterm for count 1, struck one of the section 11370.2, subdivision (a) allegations, imposed two consecutive three-year terms for the other two section 11370.2, subdivision (a) allegations, imposed a concurrent two-year term for count 2, and stayed counts 3 and 4 pursuant to Penal Code section 654.  In case No. SS102580, the trial court imposed a consecutive one-year term for count 1 and a consecutive two-year term for the on-bail enhancement.

The trial court suspended execution of sentence, placed defendant on probation, and imposed a number of probation conditions, including:  (1) "[o]bey all laws"; (2) "[n]ot use or possess alcohol/narcotics, intoxicants, drugs, or other controlled substances without the prescription of a physician"; and (3) "[n]otify Probation of all your doctors and the medication you are currently tak[ing]".

### C.    Probation Violation Proceedings

On December 29, 2011, the District Attorney filed a notice of probation violation in each case, alleging that defendant "[p]ossessed drugs without prescriptions."  A formal probation violation hearing was held on January 27, 2012, concurrently with a

---

[2] The prior convictions were:  a 1983 violation of section 11352; a 1995 violation of section 11351.5; and a 1995 violation of section 11352, subdivision (a).

3

preliminary hearing in a new case.[3] Numerous witnesses testified at the probation violation hearing.

Daniel Mejia, a Monterey County probation officer, was defendant's home confinement supervisor. Defendant's home confinement began on December 4, 2011. Between that date and December 27, 2011, defendant had several "[t]echnical violations" of her home confinement conditions: she went to undisclosed locations; she had visitors at her home who were not immediate family members; and she went to two department stores without receiving permission.

Officer Mejia went to defendant's home on December 24, 2011 to discuss one of the home confinement program violations. While he was there, defendant's two cell phones kept ringing. Mejia confiscated the two phones and read some text messages.

On one phone, there were several text messages from the same number, all on December 9, 2011. The first message read, "Auntie, is it okay, I might be able to borrow some money for my neighbor? I am hurting, Auntie." The second message, sent a minute later, read, "Auntie, it's Kenny. I need a little help today if you can, just a few things for work. If you can. I'll have the money for you as soon as I get home. I just don't have anyone else to ask. I am hurting, Auntie. That's why I am asking you. You can keep one of my phones until I am off. I've been off since 4:30. I ain't got nothing, if you could. Thanks. If not, I'll try to scrape up some paper bill. Thanks." The third message was sent about one hour later. It read: "I've got the money. Call … when you are at the house." On the other phone, there was a text message "of people wanting to go to [defendant's] house."

---

[3] Defendant was held to answer on the charges in the new case (case No. SS112412), but the charges were dismissed at the sentencing hearing in the present matter.

4

Although she claimed to not know how to read or send a text message, defendant had called back both of the text message senders. She also had outgoing text messages on the phones.

Officer Mejia conducted another search of defendant's house three days later, on December 27, 2011. He and Probation Officer Paul Palado located pills in vitamin containers, fish oil containers, and an Icebreakers candy container. Defendant had previously provided Officer Mejia with prescriptions for hydrocodeine, Valium, and Soma. However, the containers contained oxycodone and morphine in addition to the pills for which she had a prescription. Defendant had not given him prescriptions for oxycodone or morphine.

City of Marina Officer Vince Troia went to defendant's home to do "pill identification." Inside a calcium vitamin bottle, there were two ibuprofen pills, two hydrocodone pills marked Watson 387, and two hydrocodone pills marked M357. Inside a fish oil bottle, there were three fish oil pills and 92 hydrocodone pills marked Watson 387. Inside a Centrum Silver bottle, there were nine Centrum pills, one hydrocodone pill marked Watson 387, and 11 ibuprofen pills. Inside a prescription bottle for phendimetrazine, there was one Oxycontin pill and one phendimetrazine pill. Inside a prescription bottle for "dakawasay," there were two morphine pills. Inside the Icebreakers container, there were seven hydrocodone pills marked Watson 387, one hydrocodone pill marked Watson 853, and eight carisoprodol (Soma) pills. Defendant also had a recently filled prescription bottle of hydrocodone, which was almost full.

During the December 27, 2011 search, the officers also found two additional cell phones in defendant's vehicle. There were text messages on these phones. One was sent on the afternoon of December 24, 2011. It read: "[Y]our pies are ready, plus I got some V's for you. Do you happen to have any SS? Let me know." According to Officer Palado, "V" likely stood for Valium or Vicodin, and "S" likely stood for Soma.

5

Monterey Police Officer Aaron Delgado opined that defendant possessed narcotics for sale, based on the number of pills, the different types, how the pills were packaged, the text messages, and defendant's history.

Defendant testified at the probation violation hearing. She claimed she had current or past prescriptions for all of the different pills. She had been in three major car accidents and had undergone major back surgery. She kept pills from prior prescriptions, because at one point she could not afford new prescriptions. She possessed a large number of hydrocodone pills because she took six to eight per day. She claimed that she had forgotten about putting her extra pills in the various bottles, but she acknowledged that she had taken the bottles with her during a recent move.

Defendant further testified that she kept personal cell phone and a second cell phone for calls relating to her housekeeping business. The other two phones were just old ones she had "laying around." She claimed she did not text message much and that her adult children sometimes used her phones.

At the end of the hearing, the trial court found that defendant had violated probation, stating, "Well, I'm going to find the defendant has failed to comply with the specific terms and conditions of her probation that she keep probation advised of all prescription medication she had in her possession. [¶] I also find she violated probation by failing to obey all laws, specifically that she possessed controlled substances for sale. [¶] Whether or not she had adequate prescriptions is not the point, it's whether she's selling part or all of her prescription medication and these text messages are simply incriminating. [¶] There is no rational or reasonable way to analyze those without coming to the obvious conclusion that she is selling controlled substances. [¶] As we all know, many drug sellers use themselves and sell to support their habits, so it would not surprise me if she is using prescription medicine. She probably has many physical ailments that warrant prescription medicine, she's also selling portions of those. [¶]

6

Although the defendant is quite sympathetic, her testimony, the Court did not find to be credible."

On March 2, 2012, the trial court revoked defendant's probation and ordered the previously suspended 12-year prison term to be executed. In rejecting defendant's request for a disposition other than execution of the prison term, the trial court noted that defendant's criminal history dated back to 1977 and that she had "at least seven prior felony convictions." It also noted that she had violated the conditions of the home confinement program. The trial court then stated, "She was selling the prescription drugs. I am one hundred percent sure of that, and that's why we're here today. And to color coat it any other way, it is just not the facts."

## DISCUSSION

### A.    *Probation Violation Findings*

Defendant contends the trial court erred by finding that she violated her probation by failing to "keep probation advised of all prescription medication she had in her possession," since there was no such probation condition. She also argues there was insufficient evidence to support the trial court's finding that she failed to "obey all laws, specifically that she possessed controlled substances for sale."

### 1.    **Probation Revocation Standards and Standard of Review**

"Pursuant to Penal Code section 1203.2, subdivision (a) . . . , a court is authorized to revoke probation 'if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of his or her probation . . . .' " (*People v. Rodriguez* (1990) 51 Cal.3d 437, 440, fn. omitted (*Rodriguez*).) "It has long been recognized that the Legislature, through this language, intended to give trial courts very broad discretion in determining whether a probationer has violated probation." (*Id.* at p. 443.) The statute thus "confer[s] great flexibility upon judges making the probation revocation determination." (*Ibid.*) A preponderance of the

7

evidence standard is appropriate because revocation " 'deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special . . . restrictions.' " (*People v. Coleman* (1975) 13 Cal.3d 867, 877, fn. 8, quoting *Morrissey v. Brewer* (1972) 408 U.S. 471, 480; see also *Rodriguez, supra,* 51 Cal.3d at p. 442.)

"In placing a criminal on probation, an act of clemency and grace [citation], the state takes a risk that the probationer may commit additional antisocial acts. Where probation fails as a rehabilitative device, as evidenced by the probationer's failure to abide by the probation conditions, the state has a great interest in being able to imprison the probationer without the burden of a new adversary criminal trial. [Citation.]" (*Rodriguez, supra,* 51 Cal.3d at p. 445.) Consequently, "[t]he role of the trial court at a probation revocation hearing is not to determine whether the probationer is guilty or innocent of a crime but whether he [or she] can be safely allowed to remain in society. [Citation.]" (*People v. Monette* (1994) 25 Cal.App.4th 1572, 1575.)

" '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .' " (*Rodriguez, supra,* 51 Cal.3d at p. 443.)

**2.      Defendant's Failure to Advise Probation of All Prescription Medication in Her Possession**

Defendant first contends the trial court erred by finding that she violated her probation by failing to "keep probation advised of all prescription medication she had in her possession." She argues there was no such probation condition.

Defendant acknowledges that she was prohibited from using or possessing controlled substances without a prescription and that she was required to notify the Probation Department of all the medications she was "currently tak[ing]." However, she claims, these conditions did not prevent her from possessing old medications for which she once had a prescription, without notifying the Probation Department.

A probation condition must be interpreted "on the basis of what a reasonable person would understand from the language of the condition itself." (*People v. Bravo* (1987) 43 Cal.3d 600, 607; see also *People v. Lopez* (1998) 66 Cal.App.4th 615, 630-631 [probation conditions should be given a " ' "reasonable and practical construction" ' "].) In general, we may construe probation conditions to contain terms that are "fairly implied." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1117 (*Gallo*); cf. *People v. Garcia* (1993) 19 Cal.App.4th 97, 102 [implication disfavored where the probation condition implicates constitutional rights].)

Here, the probation conditions (1) prohibited defendant from possessing medication without a prescription and (2) required her to notify the Probation Department of all the medications she was currently taking. The requirement that defendant have *current* prescriptions for any medication she possessed or used is "fairly implied." (*Gallo, supra,* 14 Cal.4th at p. 1117.) A reasonable person would understand that defendant was prohibited from possessing any medication without a *current* prescription. And, since defendant was required to notify probation of any medication she was "currently tak[ing]," a reasonable person would understand that defendant was prohibited from possessing *any* medication without notifying the Probation Department.

We conclude that the trial court's determination was based on a reasonable interpretation of the probation conditions. The record supports its finding that defendant violated her probation by possessing medication without a current prescription and without notifying the Probation Department.

### 3.    Defendant's Failure to Obey All Laws

Defendant contends there was insufficient evidence to support the trial court's finding that she failed to "obey all laws, specifically that she possessed controlled substances for sales." She contends that the text messages did not necessarily relate to the sale of controlled substances. At best, she argues, even if the text messages were

9

requests for drugs from third parties, there was no direct evidence that defendant actually sold drugs to anyone.

Applying the preponderance of the evidence standard, the trial court reasonably determined that defendant was, more likely than not, selling drugs. (See *Rodriguez, supra,* 51 Cal.3d at p. 442.) The record supports this determination. In particular, the trial court heard expert testimony from Officer Delgado, who opined that defendant possessed narcotics for sale based on the number of pills, the different types, how the pills were packaged, the text messages, and defendant's history. As the trial court found, the text messages made no sense unless they related to drug sales. The record established that defendant responded to at least some of the text messages by calling the senders. As the trial court also found, defendant was not credible in attempting to explain why she possessed so many pills and why some of them were packaged in vitamin bottles. Based on this evidence, the trial court's finding that defendant failed to "obey all laws," because she possessed controlled substances for sale, was not an abuse of discretion.

### B.      *Execution of Prison Sentence*

Defendant contends the trial court abused its discretion by ordering execution of the prison sentence, rather than an alternative disposition. As she points out, the trial court had discretion to reinstate her on probation, under the same or modified conditions. (See *People v. Medina* (2001) 89 Cal.App.4th 318, 321, and cases cited.)

Defendant argues that an alternative disposition was warranted because this was her first violation of probation, because there was no direct evidence she was actually engaged in unlawful activity, and because she had serious physical ailments that led to her addiction. Defendant also points out that she had strong support from members of her family and the community, many of whom testified at her sentencing hearing.

On this record, the trial court's decision to order execution of the previously-imposed prison sentence was not an abuse of discretion. The trial court was "one hundred percent sure" that defendant was engaged in drug sales. The evidence strongly

10

suggests that defendant was, at a minimum, possessing prescription medication for sale – the same type of criminal conduct for which she had been granted probation. Thus, the trial court's decision to revoke probation was not "arbitrary or irrational." (*People v. Zaring* (1992) 8 Cal.App.4th 362, 378.)

### C.     *Fees and Fines*

At the initial sentencing hearing on July 29, 2011, the trial court ordered defendant to pay fees and fines "as outlined in" the probation report. The minutes reflect imposition of the following: a $200 restitution fine (Pen. Code, § 1202.4, subd. (b)) as to each of the six counts, for a total of $800 in case No. SS101403 and $400 in case No. SS102580; suspended probation revocation fines (Pen. Code, § 1202.44) in the same amounts as the restitution fines; criminal laboratory analysis fees (§ 11372.5, subd. (a)) of $280 for count 1 in each case and $200 for each of the other four counts; $200 drug program fees (§ 11372.7, subd. (a)) for each count; $40 court security fees (Pen. Code, § 1465.8, subd. (a)(1)) for each count; and $30 criminal conviction assessments (Gov. Code, § 70373) for each count.

At the March 2, 2012 sentencing hearing, the trial court ordered defendant to pay "any outstanding balance of the original restitution fines." The trial court also imposed a $200 probation revocation fine for each case, rather than the previously suspended amounts of $200 per count. It imposed a suspended $200 parole revocation fine in case No. SS102580 and a suspended $1,000 parole revocation fine in case No. SS101403.[4]

The abstract of judgment reflects imposition of a $200 restitution fine (Pen. Code, § 1202.4, subd. (b)) in each case, a $200 probation revocation fine (Pen. Code, § 1202.44) in each case, and a suspended $200 parole revocation fine (Pen. Code,

---

[4] The trial court apparently misspoke, stating that the $1,000 fine was being "imposed but suspended pending successful completion of *probation.*" (Emphasis added.) As defendant was sentenced to state prison, it is clear the trial court intended to impose a suspended parole revocation fine.

11

§ 1202.45) in each case. It does not reflect any drug program fees (§ 11372.7, subd. (a)), criminal laboratory analysis fees (§ 11372.5, subd. (a)), court security fees (Pen. Code, § 1465.8, subd. (a)(1)), or criminal conviction assessments (Gov. Code, § 70373).

We requested supplemental briefing to address the numerous discrepancies in the amounts of fees and fines imposed and reflected in the record.

**1.     Restitution Fines, Probation Revocation Fines, and Parole Revocation Fines**

"[A] restitution fine survive[s] the revocation of probation." (*People v. Chambers* (1998) 65 Cal.App.4th 819, 822.) Thus, the original restitution fines "remained in force despite the revocation of probation." (*Id.* at p. 823; see also *People v. Cropsey* (2010) 184 Cal.App.4th 961, 965-966 (*Cropsey*).) Since the trial court had initially imposed $800 in restitution fines for case No. SS101403 and $400 in restitution fines for case No. SS102580 and nothing in the record indicates those obligations had been satisfied in whole or in part, the trial court erred by imposing lesser restitution fines following the revocation of defendant's probation. The trial court should have simply ordered that the abstract of judgment reflect the restitution fines previously imposed. (See *id.* at p. 966.)

At the March 2, 2012 sentencing hearing, the trial court was required to impose the previously suspended probation revocation fines: $800 in case No. SS101403 and $400 in case No. SS102580. (See *People v. Guiffre* (2008) 167 Cal.App.4th 430, 434.) The trial court erred by imposing probation revocation fines of only $200 per case. Likewise, the trial court erred when it imposed suspended parole revocation fines of only $200 per case at the March 2, 2012 hearing. It was required to impose those fines in the same amount as the restitution fines. (Pen. Code, § 1202.45.)

We will modify the judgment to set the restitution, probation revocation, and parole revocation fines in accordance with the amounts set at the July 29, 2011 sentencing hearing.

12

## 2.      Drug Program and Lab Fees

There are three issues concerning the drug program and laboratory analysis fees. First, at the March 2, 2012 sentencing hearing, the trial court erred by failing to order that the abstract of judgment reflect the previous imposition of these fees. (Cf. *Cropsey, supra,* 184 Cal.App.4th at p. 966.)

Second, the trial court erred by failing to stay the criminal laboratory analysis fee and drug program fees for counts 3 and 4 in case No. SS101403, since those counts were stayed pursuant to Penal Code section 654. (See *People v. Sharret* (2011) 191 Cal.App.4th 859, 869 (*Sharret*); compare *People v. Vega* (2005) 130 Cal.App.4th 183, 194.)

Third, the amounts of the criminal laboratory analysis and drug program fees are incorrect. Under section 11372.5, subdivision (a), the criminal laboratory analysis fee is $50, and under section 11372.7, subdivision (a), the drug program fee is $150. Both fees are subject to mandatory penalty assessments, which appear to have been included in the total amounts imposed, but were not separately listed. (See *Sharret, supra,* 191 Cal.App.4th at pp. 863-864; *People v. Talibdeen* (2002) 27 Cal.4th 1151, 1157; *People v. Voit* (2011) 200 Cal.App.4th 1353, 1374 (*Voit*); *People v. High* (2004) 119 Cal.App.4th 1192, 1200.)

In *Voit*, this court noted that "there are seven assessments, surcharges, and penalties parasitic to an underlying fine." (*Voit, supra,* 200 Cal.App.4th at p. 1374.) This court identified them as follows: "(1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)), (2) a 20 percent state surcharge (§ 1465.7), (3) a 30 percent state courthouse construction penalty (Gov. Code, § 70372), (4) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)), (5) a 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)), (6) a 10 percent additional penalty ' "[F]or the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act" ' (Gov. Code,

13

§ 76104.6, subd. (a)(1)), and (7) a 10 percent additional state-only penalty to finance Department of Justice forensic laboratories (Gov. Code, § 76104.7). [Citation.]" (*Voit, supra,* 200 Cal.App.4th at pp. 1373-1374, fn. omitted; see also *Sharret, supra,* 191 Cal.App.4th at pp. 863-864.)

The Government Code section 76104.7 penalty was increased from 10 percent to 30 percent subsequent to defendant's commission of the offenses charged in case No. SS101403 and prior to her commission of the offenses charged in case No. SS102580. (See Stats. 2009-2010, 8th Ex. Sess., ch. 3 (A.B. 3), § 1, eff. June 10, 2010.) Thus, for the criminal laboratory fee, the total amount imposed should have been $180 per count in case No. SS101403 and $190 per count in case No. SS102580. For the drug program fee, the total amount imposed should have been $540 per count in case No. SS101403, and $570 per count in case No. SS102580. We will modify the judgment to include these fees in the proper amounts.

### 3. Court Security Fees and Criminal Conviction Assessments

At the July 29, 2011 hearing, the trial court imposed a $40 court security fee (Pen. Code, § 1465.8, subd. (a)(1)) and a $30 criminal conviction assessment (Gov. Code, § 70373) for each count. Although it was unnecessary to reimpose those still extant financial obligations at the March 2, 2012 sentencing hearing, the abstract of judgment should have reflected the previous imposition of those fees. (Cf. *Cropsey, supra,* 184 Cal.App.4th at p. 966.) We will order the abstract amended to reflect the previous imposition of these fees.

### DISPOSITION

The judgment is modified in the following respects:

In case No. SS101403, by increasing the restitution fine (Pen. Code, § 1202.4, subd. (b)), the probation revocation fine (Pen. Code, § 1202.44), and suspended parole revocation fine (Pen. Code, § 1202.45) to $800 each, and by imposing $2,160 in drug

14

program fees and penalty assessments (§ 11372.7, subd. (a)) and $360 in laboratory analysis fees and penalty assessments (§ 11372.5, subd. (a)).

In case No. SS102580, by increasing the restitution fine (Pen. Code, § 1202.4, subd. (b)), probation revocation fine (Pen. Code, § 1202.44), and suspended parole revocation fine (Pen. Code, § 1202.45) to $400 each, and by imposing $1,140 in drug program fees and penalty assessments (§ 11372.7, subd. (a)) and $380 in laboratory analysis fees and penalty assessments (§ 11372.5, subd. (a)).

In addition, the abstract of judgment shall reflect the imposition of $160 in court security fees (Pen. Code, § 1465.8, subd. (a)(1)) and $120 in criminal conviction assessments (Gov. Code, § 70373) in case No. SS101403, and it shall reflect the imposition of $80 in court security fees (Pen. Code, § 1465.8, subd. (a)(1)) and $60 in criminal conviction assessments (Gov. Code, § 70373) in case No. SS102580.

The court shall prepare an amended abstract of judgment and forward a certified copy to the California Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MÁRQUEZ, J.

16