Filed 1/16/14  P. v. Turner CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057983 |
| v. | (Super.Ct.No. FSB1000054) |
| GREGORY PATRICK TURNER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant Gregory Patrick Turner pled guilty to the court to three counts of

second degree robbery (counts 1, 6, 7 – Pen. Code, § 211),[1] two counts of attempted second degree burglary (counts 2 & 3 – §§ 664/211), and two counts of assault with a firearm (counts 4 & 5 – § 245, subd. (a)(2)). Defendant admitted allegations he committed the offenses in counts 1 through 7 while out on bail or released on his recognizance (§ 12022.1) and for the benefit of, at the direction of, or in association with a criminal street gang (§ 186, subd. (b)(1)(A)). With respect to the offenses in counts 1 through 6, defendant admitted he had been personally armed with a firearm (§ 12022.53, subd. (b)). As to the offense in count 7, defendant admitted a principal had been personally armed with a firearm (§ 12022.53, subds. (b) & (e)(1)).[2] Pursuant to his plea, the court sentenced defendant to a determinate term of 24 years incarceration.[3]

Upon defendant's request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a statement of the case, a brief statement of the facts, and identifying the following six potentially arguable issues: 1) whether the court erred in declining to appoint a second mental health expert to examine defendant; 2) whether there was substantial evidence

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The court took defendant's plea both upon his written and oral waiver of rights and comprehension of the consequences of the plea.

[3] Defense counsel entered no objection to the sentence as it was the basis for defendant's plea.

defendant was competent to stand trial thereby authorizing the court to reinstate criminal proceedings; 3) whether defendant's guilty plea was constitutionally valid; 4) whether there was a proper factual basis for the plea; 5) whether the court abused its discretion in imposing sentence; and 6) whether the trial court properly denied defendant's request for a certificate of probable cause. We affirm.

## FACTUAL AND PROCEDURAL HISTORY[4]

On October 1, 2009, at 1:00 a.m. San Bernardino Police officer Reuben Cordoba was dispatched to an In-N-Out Burger restaurant in the City of San Bernardino. Cordoba spoke with employee Troy Hayman who told Cordoba he was in the manager's area of the west building carrying his cash till when he was contacted by a suspect with a sawed-off shotgun who ordered him to open the safe. Entrance to the building required input of a code known only to employees on the door's keypad. Hayman opened the safe and the suspect took $300. The suspect then ordered Hayman into the storage room and told him to close the door; Hayman did so.

On December 24, 2009, at approximately 1:25 a.m., San Bernardino Police officer Garrett Hoefer was dispatched to the same In-N-Out Burger restaurant. He spoke with Michael Isom who told Hoefer he was working in the west building washing dishes when a suspect entered the building holding a shotgun. The suspect told Isom to put his hands

---

[4] The parties stipulated the evidence adduced at the preliminary hearing would be the factual basis for defendant's plea. Our factual history is taken from the preliminary hearing.

3

up and walk to the rear of the building; Isom did so. They then encountered Brandon Perez, the manager. The suspect demanded money. Perez informed the suspect Perez had already made a drop into the safe and there was no way he could extract the money from the safe. The suspect began counting down from five. Perez passionately explained there was no way he could access the safe. The suspect ordered Isom and Perez to enter the men's locker room and lie down.

On the same date, approximately 15 minutes later, San Bernardino Police officer Troy Forsythe was dispatched to an AM/PM in the City of San Bernardino. He spoke with Carlos Garcia Ruiz, the cashier working that night. Garcia told Forsythe he had been robbed by two Black men. One of them carried a short barreled shotgun. The suspects told him to open the registers and give them the money therein; Garcia did so.

On December 27, 2009, San Bernardino Police officer Mark Blackwell was dispatched to a Circle K in San Bernardino. He spoke with Roberto Rubio, the night clerk working that evening. Rubio told Blackwell two Black males entered the store, one who appeared to be carrying a shotgun, and told him to open the cash register. Rubio was told to place the money in the register in a backpack carried by one of the suspects; he did so. As the suspects were leaving, they told Rubio that if he called the police they would kill him. Rubio called the police after they left. The suspects took approximately $120 from the register.

San Bernardino Police officer Richard Hale was assigned to investigate the four robberies. In the course of his investigation he contacted defendant. He advised

4

defendant of his *Miranda*[5] rights which defendant said he understood and waived. Defendant said that on October 1, 2009, he entered the In-N-Out with a sawed-off shotgun with a code given him by Eric Canada. Defendant said that sometime around Christmas, he also entered the In-N-Out armed with the same shotgun with a different code provided to him by Canada because the code had been changed. In the latter incident, he was unable to obtain any money. Defendant told the employees to wait in a closet so they would not see him.

Defendant said he committed the robbery of the AM/PM with Canada shortly after the attempted robbery of the In-N-Out because they had been unable to obtain any money at the latter site. Defendant also said he was involved in the robbery of the Circle K on December 27, 2009, with Canada. Canada held the shotgun in the that robbery. Hale also spoke with Canada who said he held the shotgun during the Circle K robbery. Canada said he did not have the shotgun during the other three robberies.

The People charged defendant by information with three counts of second degree robbery (counts 1, 9, & 10 – § 211), three counts of kidnapping to commit another crime (counts 2, 5, & 6 – § 209, subd. (b)(1)), two counts of attempted second degree robbery (counts 3 & 4 – §§ 664/211), and two counts of assault with a firearm (counts 7 & 8 – § 245, subd. (a)(2)). The People additionally alleged that in his commission of the

---

[5] *Miranda v. Arizona* (1966) 384 U.S. 436.

offenses in counts 1 through 10, defendant personally used a firearm (§ 12022.53, subd. (b)); was out on bail or released on his own recognizance (§ 12022.1); and the offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186, subd. (b)(1)(A)). With regard to the offense in count 10, the People alleged a principal personally used a firearm (§ 12022.53, subd. (b) & (e)(1)).

On December 13, 2010, defense counsel filed a motion to set aside the information with respect to counts 2, 5, and 6. On February 10, 2011, the People submitted on defendant's motion and moved to dismiss the counts. The court dismissed counts two, five, and six. [6] On May 23, 2011, the court held a hearing on defendant's *Marsden*[7] motion which the court denied.

On July 13, 2012, defense counsel declared a doubt regarding defendant's mental competency to stand for trial. The court observed: "Well, [defendant] has been in court a lot. I have had a lot of discussions with him. I've, personally, never seen anything that he has done or said which has given me any reason to think that he's not fully engaged with the process and understands it with remarkable clarity." After an in camera discussion with defense counsel, the court suspended criminal proceedings and appointed an expert to evaluate defendant.

---

[6] The People subsequently filed a first amended information reflecting dismissal of the kidnapping counts.

[7] *People v. Marsden* (1970) 2 Cal.3d 118.

6

On August 10, 2012, Dr. Dennis Wallstrom filed his psychological evaluation of defendant. Wallstrom opined "Whatever symptoms [defendant] may be experiencing currently do not appear to impede his current mental competence to stand trial . . . ." He further observed defendant "appears to have an adequate rational as well as factual understanding of court procedures" and "expresses high motivation to cooperate with his attorney for the best possible resolution of his case."

At the hearing on defendant's mental competency to stand for further criminal proceedings that same day, defense counsel requested the court appoint another expert to prepare a second evaluation. The court denied the request, but offered counsel additional time to obtain a second evaluation on his own. The court ordered criminal proceedings remain suspended.

On September 21, 2012, defense counsel requested further time to have a second evaluation of defendant conducted. The court denied the request and set the matter for a jury trial regarding the issue of defendant's mental competency to stand for further criminal proceedings.

On October 29, 2012, defense counsel submitted on Wallstrom's psychological report. The court found defendant mentally competent to stand trial and reinstated criminal proceedings.

## DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we

7

have independently reviewed the record for potential error and find no arguable issues. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 281 [Duty to appoint two experts triggered only when the defendant informs the court he is not seeking a finding of incompetence]; see *People v. Leonard* (2007) 40 Cal.4th 1370, 1392 [Expert's report that a defendant is competent to stand trial is substantial evidence supporting a court's reinstatement of criminal proceedings.]; see *People v. Voit* (2011) 200 Cal.App.4th 1353, 1364-1365 [Constitutional validity of plea ensured by trial court's inquiry of the defendant that the plea is voluntarily and freely made.]; *People v. Holmes* (2004) 32 Cal.4th 432, 436 [Stipulation that preliminary hearing transcript provide factual basis for plea complies with requirements of section 1192.5]; *People v. De Soto* (1997) 54 Cal.App.4th 1, 7-8 [Complaints about sentencing court's purported mis-weighing of sentencing factors or recitations of factors in the particular case are forfeited if not raised below.]; *People v. Sandoval* (2007) 41 Cal.4th 825, 847 [Sentencing decisions reviewed for abuse of discretion]; see *People v. French* (2008) 43 Cal.4th 36, 43-45 [Certificate of probable cause required to challenge agreed upon sentence where the court exercises no discretion at sentencing]; *People v. Castelan* (1995) 32 Cal.App.4th 1185, 1188 [The denial of a request for certificate of probable cause can only be challenged by petition for writ of mandate.].)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

RICHLI

J.

9